816 P.2d 1352 (1991)
In the Matter of E.A.O. A Minor Under the Age of Eighteen (18) Years.
L.O., Appellant,
v.
STATE of Alaska, Appellee.
No. S-3467.
Supreme Court of Alaska.
August 30, 1991.
*1353 Blair McCune, Asst. Public Defender, John B. Salemi, Public Defender, Anchorage, for appellant, L.O.
Philip J. McCarthy, Jr., Deputy Public Advocate, Anchorage, guardian ad litem, for E.A.O.
Dianne Olsen, Asst. Atty. Gen., Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellee.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
BURKE, Justice.
In this appeal from the superior court, the mother and guardian ad litem of E.A.O. seek to clarify the responsibility of the Department of Health and Social Services for the medical costs of children in the department's legal custody who are placed in their parents' home. The superior court held that in such a case the department has no responsibility. We reverse.

I
E.A.O. was born prematurely on June 11, 1987, at Anchorage's Humana Hospital and soon transferred to Providence Hospital's Neonatal Intensive Care Unit. On August 12, 1988, the Department of Health and Social Services petitioned to have E.A.O. adjudicated a child in need of aid (CINA) under AS 47.10.010(a)(2)(A) based on the following facts:
[E.A.O.] was born prematurely (30 weeks gestation) due to alcohol abuse by her mother. [E.A.O.] has remained hospitalized at Providence Hospital since birth with one trip to Seattle for heart surgery. She must have 24 hour oxygen, BEM and heart monitor and be fed through a gastrometer. [E.A.O.] has stabilized enough to be discharged to a home setting. [E.A.O.'s mother] has completed in-patient treatment in Seattle and continues to receive aftercare through Charter North. She regularly attends Alcoholics Anonymous meetings. Her husband works out-of-town and they have three other children. The parents are requesting placement in a medical foster home until [E.A.O.'s father] returns in November. (A medical foster home has been recruited by this worker and is available.) Due to [the father's] absence and [the mother's] treatment needs, the parents are unable to provide the needed care for [E.A.O.] at this time.
At an emergency custody hearing on August 25, 1988, the parents stipulated to the facts alleged in the petition, and the superior court gave temporary legal custody to the department pursuant to AS 47.10.142.[1] The order authorized the department to place E.A.O. in a medical foster home.
The department apparently returned E.A.O. to her parents' home in October 1988. In an order effective December 7, 1988, the superior court adjudicated E.A.O. a child in need of aid, granting continued "temporary custody" to the department and authorizing the department "to place the minor in a home deemed suitable, which it indicates at the present time to be in the home of the minor's parents." On January 20, 1989, the child's guardian ad litem filed a motion to "clarify" the department's responsibility, as E.A.O.'s legal custodian, to provide the cost of her medical care.
Before any ruling on this motion, a disposition hearing was held on March 6, 1989. The parents and guardian ad litem argued *1354 that the department should continue to have legal custody of E.A.O., emphasizing that the family had no means of paying for the extensive and continuing medical care required by E.A.O.[2] The department argued that the conditions justifying intervention  the mother's alcoholism and the father's work-related absence  no longer existed and that legal custody should be returned to the parents, with supervisory monitoring by the department. The department specifically rejected any assertion that it took action because of E.A.O.'s medical needs.
Subsequent to this disposition hearing, the Children's Master concluded that he could
not agree with the Department that the situation has improved to the extent that this court can approve a return of legal custody to the parents. I find that the Department must continue to play a pinnacle role in the coordination and delivery of services in this case, and that therefore, the child should be committed to the custody of the Department pursuant to AS 47.10.080(c)(1).
The master emphasized that the "fact that [E.A.O.] is a special needs child is a material factor in this case." He made no ruling on the guardian's motion concerning the department's responsibility for medical costs.
The department objected to the master's report on the ground that the family's limited abilities to meet E.A.O.'s medical needs "do not relate to any specific child protection risk caused by the parents. Under the circumstances, the department need not have legal custody of the child." The superior court agreed. It released E.A.O. to the custody of her parents subject to the supervision of the department. Concerning the guardian ad litem's motion for clarification of responsibility for medical costs, the court ruled:
The Department of Health and Social Services is not responsible for the costs of medical care of children in their legal custody who continue to reside with their parents.
... The Department of Health and Social Services is responsible for paying the costs of medical care of children in foster care, subject to the existence of other insurance and subject to reimbursement by the child's parents.
E.A.O.'s mother[3] appeals solely on the question of whether the department was responsible for the costs of E.A.O.'s medical care when the state had legal custody of the child, but she actually resided with her parents.[4]

II
This narrow question requires us to interpret the provisions of Alaska's CINA statute.[5] Concerning legal custody and various rights and responsibilities, the law provides:
(a) When a child is committed under AS 47.10.080(b)(1) or (c)(1) to the department or released under AS 47.10.080(b)(2) *1355 or (3) or (c)(2) to the child's parents, guardian, or other suitable person, a relationship of legal custody exists. This relationship imposes on the department and its authorized agents or the parents, guardian, or other suitable person the responsibility of physical care and control of the child, the determination of where and with whom the child shall live, the right and duty to protect, train and discipline the child, and the duty of providing the child with food, shelter, education, and medical care. These obligations are subject to any residual parental rights and responsibilities and rights and responsibilities of a guardian if one has been appointed. When parental rights have been terminated, or there are no living parents and no guardian has been appointed, the responsibilities of legal custody include those in (b) and (c) of this section. The department or person having legal custody of the child may delegate any of the responsibilities under this section, except authority to consent to marriage, adoption, and military enlistment may not be delegated. For purposes of this chapter a person in charge of a placement setting is an agent of the department.
... .
(c) When there has been transfer of legal custody or appointment of a guardian and parental rights have not been terminated by court decree, the parents shall have residual rights and responsibilities. These residual rights and responsibilities of the parent include, but are not limited to, the right and responsibility of reasonable visitation, consent to adoption, consent to marriage, consent to military enlistment, consent to major medical treatment except in cases of emergency or cases falling under AS 09.65.100, and the responsibility for support, except if by court order any residual right and responsibility has been delegated to a guardian under (b) of this section.
AS 47.10.084. Although section .084 on its face only applies to cases where children are committed to the department after a disposition hearing, AS 47.10.080, the parties agree that its principles apply here, where the commitment was the result of a temporary placement hearing, AS 47.10.142(e). The parties also agree that when the department has legal custody over a child placed in a foster home, the department is responsible for the cost of the child's medical care. The parties disagree, however, over the scope of the department's responsibilities when it has legal custody, but chooses to place a child in the parents' home.
The core of the department's argument is that "AS 47.10.084 read in conjunction with other applicable statutes does not require the department to pay for the costs of medical care for E.A.O. during the time she resided with her parents, simply because the department had legal custody of her for child protection purposes."[6] Appellee's Brief at 9. It argues that the statutory scheme taken as a whole provides a rational basis for distinguishing the legal custody of children in the parental home from legal custody of children removed from the parental home.
The department points first to AS 47.10.084(c), which provides for residual parental responsibilities. The department would interpret that to mean that parental responsibility eliminates any departmental responsibility in the absence of a specific provision to the contrary. The department notes that other sections of the statute authorize it to pay maintenance costs and to apply for medicaid benefits when a child is placed in a foster home, AS 47.10.230(b), and require it to pay for the medical expenses of handicapped foster children, AS 47.10.230(d). The inclusion of these specific terms, the department argues, presumptively excludes terms which are not mentioned. *1356 Thus, it is not authorized to pay costs of a child left in the parental home and it is not required to pay for the care of handicapped children left in the home.
The department buttresses this view of the law through reference to the statutory statement of "[p]urpose and policy relating to children:"
The purpose of this title as it relates to children is to secure for each child the care and guidance, preferably in the child's own home, that will serve the moral, emotional, mental, and physical welfare of the child and the best interests of the community; to preserve and strengthen the child's family ties unless efforts to preserve and strengthen the ties are likely to result in physical or emotional damage to the child, removing the child from the custody of the parents only as a last resort when the child's welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the child is removed from the family, to secure for the child adequate custody and care and adequate planning for permanent placement of the child.

AS 47.05.060 (emphasis added). The department asserts that the emphasized text accords with its view that the AS 47.10.084(a) discussion of the responsibilities of legal custody "primarily" applies to situations where the child is removed from the parental home.
The department refers to an analysis by the Legislative Affairs Agency of AS 47.10.084 before its enactment, which explained the rationale of the legal custody provision:
By stating the major rights and responsibilities of those with legal custody or appointed guardians it is hoped these persons can act without feeling unduly restrained, because of fear of not having the right and power to act in certain instances. By stating the residual rights and responsibilities of the parents it is intended to assert the parent[s'] inherent rights and responsibilities and thus help maintain the parent and child relationship.
Children's Code Revision Task Force, Legislative Affairs Agency, Memorandum to Rep. Terry Gardiner (April 13, 1977). The department translates this passage as meaning "the intent is to inform those with the physical care of the child that they may provide day-to-day care to the child, but not to limit the `parent's inherent rights and responsibilities.'"
The department finally makes a vigorous policy argument against holding it responsible for the medical costs of children in its legal custody who are still living at home.[7] The result of such a holding, the department fears, could be "a chilling effect on the department's willingness to take legal custody of children," because it is not budgeted to pay for the medical care of children left at home. It points out that the medical costs of children placed in foster homes are generally covered by Medicaid, which often  as in E.A.O.'s case  is not available for children left at home. The goals of legal custody have only been to attain the power to protect the child and provide treatment services. The department fears that these goals would be sacrificed if legal custody were held to include a responsibility the department is not capable of accepting.
We find the department's arguments unpersuasive. We think it clear that the department is responsible for the medical costs of children in its custody, whether the children are placed at home or in a foster home. Alaska Statute 47.10.084(a) is very explicit in saying that the "relationship [of legal custody] imposes on the department *1357 ... the duty of providing the child with ... medical care." As this court has noted, "[i]f the meaning of a statute is plain[,] it should be enforced as it reads without judicial modification or construction." Horowitz v. Alaska Bar Ass'n, 609 P.2d 39, 41 (Alaska 1980).[8]
Nothing in other statutory provisions necessarily contradicts the plain and unambiguous language of AS 47.10.084(a). Any apparent contradictions should be harmonized, if possible, rather than read to make one provision negate another. In re Estate of Hutchinson, 577 P.2d 1074, 1075 (Alaska 1978). The language concerning residual parental responsibilities, for example, should be read as clarifying that the department's responsibility for medical care does not mean that parents are relieved of responsibility. Rather, the law provides a basis for the department, having fulfilled its duty toward the child, to turn to the parents for reimbursement. AS 47.10.084(c); AS 47.10.120. The department's reading that residual parental responsibilities eliminate the department's responsibility, besides being strained, would unnecessarily contradict the plain language of section .084(a).[9]
Alaska Statute 47.10.230, which the department claims only allows it to pay maintenance costs of foster children, can also be harmonized with the explicit language of section .084(a). The only specific limitation concerning foster children appears in paragraph (d): "In addition to money paid for the maintenance of foster children under (b) of this section, the department (1) shall pay the costs of caring for physically or mentally handicapped foster children... ." AS 47.10.230(d). The paragraph goes on to specify various expenses related to caring for physically and mentally handicapped foster children  such as "respite care"  that the department will pay.
This statute means what it says, but it does not imply that the state has no responsibility to pay for the medical care of its wards who are not foster children. Such an implication would mean that the state could not pay medical care for children under its jurisdiction who are institutionalized. Instead, as E.A.O.'s mother suggests, it seems far more likely that the statute was enacted to fulfill the legal commitments the state is required to make in order to receive federal funds under Title IV-E of the Social Security Act.
Section .084(a) plainly and specifically assigns the department the duty of providing medical care to children in its legal custody. Elsewhere, in the context of a discussion of placement of children in foster care, the law specifies that the department may pay the medical costs of foster children. AS 47.10.230(d). There is no more reason to view this as a prohibition of paying medical costs of children placed at home, than there would be to view it as a prohibition of paying medical costs of children placed in institutions.
The purpose sections of the statute and of the Legislative Affairs Agency memorandum are both vague and they do not provide any convincing reason to ignore the plain language of the statute. Alex, 646 P.2d at 208 n. 4. Section .060 is only obliquely supportive of the department's position. The memorandum is not at all inconsistent with the position of the mother.
The department's policy argument  that holding the department responsible for medical costs of children in its custody who are placed at home would result in less protection for children because of budgetary constraints  is beyond the purview of *1358 this court. Whether the department is adequately funded to carry out its statutory responsibilities, or whether those responsibilities should be changed in response to budgetary realities, is a question for the legislature to answer. The law as it stands today clearly assigns to the department the duty to pay the medical costs of all children in its legal custody, subject to reimbursement from the parents.
The decision of the superior court is REVERSED and this case REMANDED for entry of appropriate judgment.
NOTES
[1] AS 47.10.142 provides:

(e) If the court finds that probable cause exists it shall order the minor committed to the department for temporary placement, or order the minor returned to the custody of the minor's parents or guardian subject to the department's supervision of the minor's care and treatment... .
(f) When a minor is committed to the department for temporary placement under (e) of this section, the court order shall specify the terms, conditions, and duration of placement.
[2] E.A.O. was hospitalized for fluid in her lungs at the time of this hearing. She had been hospitalized numerous times during the period that the department had legal custody of her. The record reveals numerous, persistent medical problems requiring constant care.
[3] The mother and guardian ad litem filed a joint appellant's brief. The guardian ad litem did not participate in the reply brief due to a change in attorneys. We have generally used the term "the mother" both to refer to the main appellant brief and to the reply brief.
[4] The period of time during which the state had legal custody of E.A.O. but placed her in her parents' home was approximately nine months.
[5] Because resolution of this issue involves statutory interpretation, this court will apply its independent judgment. Waller v. Richardson, 757 P.2d 1036, 1039 n. 4 (Alaska 1988).

As an initial matter, we note that E.A.O. is no longer in the legal custody of the state, nor is there any indication that she is likely to be again in the future. The case may therefore be technically moot. Doe v. State, 487 P.2d 47, 53 (Alaska 1971). We have long held, however, that the mootness doctrine in Alaska "is a matter of judicial policy, not constitutional law." R.L.R. v. State, 487 P.2d 27, 45 (Alaska 1971). We find the circumstances of this case to fall under the exception to the mootness doctrine for cases "where the matter is one of grave public concern and is recurrent but is capable of evading review." Doe, 487 P.2d at 53. We will thus consider the merits of the case.
[6] The department initially frames the issue in terms of whether parents are relieved of their responsibility to pay for the medical care of children who live with them merely because the children are in the legal custody of the state. The answer is clearly that the parents are not relieved of ultimate responsibility, and the mother concedes as much; but the salient issue on the facts of this case is whether the department is also responsible, by virtue of having legal custody, for medical costs.
[7] The first portion of the policy argument is entitled "The Alaskan child protection system is not an entitlement program of last resort." It attributes without specific citations a number of arguments to the appellants that they simply do not make. For example, the department alleges that the appellants "would have the court believe that E.A.O. was taken into custody because of [her extraordinary] medical needs." Appellee's Brief at 20. What the mother and guardian in fact say is that the "question is not so much why or under what circumstances the state obtained custody over E.A.O., but what its responsibilities were once it obtained custody." Appellant's Brief at 19.
[8] We have rejected a "mechanical" plain meaning rule, recognizing that ambiguity is a matter of degree. State v. Alex, 646 P.2d 203, 208 n. 4 (Alaska 1982). The appropriate approach involves a "sliding scale," such that the plainer the language, the more convincing must be evidence contrary to that plain meaning. Id.; State v. Haines, 627 P.2d 1047, 1049 n. 6 (Alaska 1981). The statutory language of section .084(a) seems quite plain.
[9] The term "subject to" in section .084(a) best connotes the idea that the state's responsibility is subordinate to that of the parent, not that it is eliminated because the parents are also responsible. See Black's Law Dictionary 1425 (6th ed. 1990) ("Subject to" defined as "subordinate, subservient, inferior").