**ANCHORAGE SCHOOL DISTRICT,**
Petitioner,

v.

**Pier A. HALE, Respondent.**

No. S–5239.

Supreme Court of Alaska.

Aug. 13, 1993.

James M. Bendell, Terry A. Venneberg, Bendell & Venneberg, Anchorage, for petitioner.

Debra Fitzgerald, Michael J. Jensen, Chancy Croft Law Office, Anchorage, for respondent.

Robert A. Royce, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for Alaska Workers' Compensation Bd.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS, and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

On September 26, 1988, Pier Hale suffered injuries to her back and right shoulder while working as a teachers' assistant for the Anchorage School District. She received medical attention for these injuries at the Providence Hospital Emergency Room on October 2nd. Three days later her doctor recommended that she undergo daily therapy for these injuries for two weeks. This therapy began on October 7, 1988, at Anchorage Physical Therapists. Since daily therapy would exceed the number of compensable treatments allowed under the Alaska Workers' Compensation Board's (Board) continuing treatment guidelines, 8 Alaska Administrative Code (AAC) 45.082(f) (1992),[1] Hale was required to gain Board approval for the excess treatments if she wanted her employer to pay for them. The Board can give such approval only if the employee's doctor furnishes the employer with a detailed treatment plan within fourteen days after starting the treatments. AS 23.30.095(c).

On October 7, Physical Therapists prepared a treatment plan, but failed to include the statutorily required information regarding the "objectives, modalities, frequency of treatments, and reasons for the frequency of treatments." AS 23.30.-095(c).[2] Physical Therapists did not pre-

---

1. If an injury ... requires continuing and multiple treatments of a similar nature, ... payment for a course of treatment for the injury may not exceed more than *three treatments per week for the first month....* Upon request, and in accordance with AS 23.30.-095(c), the board will, in its discretion, approve payment for more frequent treatments.

8 AAC 45.082(f) (emphasis added).

2. On appeal to the superior court, Hale argued that the treatment plan Physical Therapists submitted satisfied the applicable statutory requirements. The superior court, however, did not reach this issue since it invalidated the regulation.

pare a full treatment plan until November 1, 1988, after the statutory period for filing the plan had expired. The School District issued a controversion notice for Hale's physical therapy, arguing that it had not received the treatment plan within the statutory period and thus was not required to compensate Hale for continuing treatments in excess of the regulation's frequency standards. The School District subsequently paid for some but not all of Hale's treatments.

Hale filed an application for adjustment of claim with the Board seeking payment for her treatments in excess of the Board's frequency standards. The Board denied this request, limiting Hale to compensation for the number of treatments allowed under the Board's guidelines. The Board based its decision solely upon Physical Therapists' failure to file a timely, conforming treatment plan.

Hale appealed the Board's decision to the superior court on the ground that the Board's standards and procedures for compensation for continuing similar treatments are invalid. The superior court held that 8 AAC 45.082(f) is invalid, reversed the Board's decision, and remanded the case to the Board for further consideration. The School District then filed this petition for review.

## CONSISTENCY BETWEEN REGULATION AND STATUTE

In 1988 the Alaska Legislature amended AS 23.30.095(c) to address compensation for employees whose injuries require a continuing course of similar treatments. Ch. 79, § 14, SLA 1988. Among other things, this amendment added the following sentence:

> When a claim is made for a course of treatment requiring continuing and multiple treatments of a similar nature, in addition to the notice, the physician or health care provider shall furnish a written treatment plan if the course of treat-

ment will require more frequent outpatient visits than the standard treatment frequency for the nature and degree of the injury and the type of treatments. AS 23.30.095(c). The amended provision also required the Board to "adopt regulations establishing standards for frequency of treatment." *Id.* The Board promulgated 8 AAC 45.082(f), which sets forth a single standard for the maximum number of treatments allowed without Board approval:

> [P]ayment for a course of treatment for the injury may not exceed more than three treatments per week for the first month, two treatments per week for the second and third months, one treatment per week for the fourth and fifth months, and one treatment per month for the sixth through twelfth months. Upon request, and in accordance with AS 23.-30.095(c), the board will, in its discretion, approve payment for more frequent treatments.

8 AAC 45.082(f). This single standard applies regardless of the nature and degree of the employee's injury. Hale argues that this conflicts with the mandate of the authorizing statute which contemplates multiple standards.

To be within the administrative agency's grant of rulemaking authority, a regulation must be "consistent with and reasonably necessary to carry out the purpose of the authorizing statute." *Fairbanks N. Star Borough Sch. Dist. v. NEA–Alaska, Inc.,* 817 P.2d 923, 925 (Alaska 1991). Further, a regulation must be "reasonable and not arbitrary." *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971).[3] We accord an administrative regulation a presumption of validity; the party challenging the regulation bears the burden of demonstrating its invalidity. *Alaska Int'l Indus. v. Musarra,* 602 P.2d 1240, 1245 n. 9 (Alaska 1979). We will not substitute our judgment for that of the agency with respect to the efficacy of a regulation

---

**3.** The validity of an administrative regulation is a question of "statutory interpretation [for which this court will] substitute [its] independent judgment for that of the agency." *NEA–Alaska,* 817 P.2d at 925.

nor review the "wisdom" of a particular regulation. *Id.*

The following is the statutory language germane to this case with the clauses numbered for purposes of discussion:

> When a claim is made for a course of treatment requiring continuing and multiple treatments of a similar nature, in addition to the notice, [ (1) ] the physician or health care provider shall furnish a written treatment plan [ (2) ] if the course of treatment will require more frequent outpatient visits than the standard treatment frequency [ (3) ] for the nature and degree of the injury and the type of treatments.... [ (4) ] The board shall adopt regulations establishing standards for frequency of treatment.

AS 23.30.095(c). The superior court read clause (3) to modify clause (2), thus requiring the Board to formulate multiple treatment standards addressing the particular "nature and degree of the injury and the type of treatments." Consequently, the superior court held that the Board's regulation setting a *single* standard for all injuries conflicts with the statute. Hale contends that the superior court correctly construed AS 23.30.095(c). The Board argues that the superior court's reading of the statute is strained. Instead, the Board contends that clause (3) modifies clause (1) and, thus, only the "written treatment plan" must consider "the nature and degree of the injury and the type of treatments."

▮▮ In interpreting a statute, this court's "approach involves a 'sliding scale,' such that the plainer the language, the more convincing must be evidence contrary to [the] plain meaning." *In re E.A.O.,* 816 P.2d 1352, 1357 n. 8 (Alaska 1991). Hale argues that her construction of the statute accords with the plain meaning of the legislature's chosen language. Hale's point is a forceful one. The phrase "the standard treatment frequency for the nature and degree of injury and the type of treatments" seems to assume multiple standards tailored to specific medical needs. The prepositional phrase beginning with the word "for" most logically refers to the immediately preceding term "the standard treatment frequency." Under this reading, the statute contemplates the application of "the" specific "standard treatment frequency"—one of many—applicable to the worker's injury. The implication of this reference to *"the* standard treatment frequency" would seem to be that the Board is to formulate many frequency standards from which "the" specific standard may be chosen in each case.

Still, this is an implied meaning only. The legislature may have contemplated different standards for different injuries, but that is not the same thing as saying that the legislature *required* the Board to promulgate different standards for different injuries. The mandate to the Board is found in the language following the number (4), *supra:* "The board shall adopt regulations establishing the standards for frequency of treatment." Does this language require different standards for different injuries? Hale contends that it does since the term "standards" is plural. This is not conclusive, however, since the Board's regulation contains various standards keyed not to the nature of the injury but the duration of treatment: one standard for the first month, another for the second month, and so on. The mandating language of the statute does not speak to the issue of whether multiple standards keyed to different kinds of injuries are required.

In the absence of clear legislative history to the contrary, we would hold that the legislature implicitly required the Board to promulgate multiple standards for different injuries. We have rarely found dispositive legislative history. However, it exists in this case.

The original house bill for the 1988 amendment to AS 23.30.095 contained a statutory frequency standard of not more than twenty visits for the first sixty days following an injury, regardless of the type of injury. The original bill provided:

> Sec. 9. AS 23.30.095(c) is amended to read:
>
> (c) ... A claim for a course of treatment requiring continuing and multiple

treatments of a similar nature is not valid unless the treatments are carried out under a written treatment plan prescribed before the commencement of treatment, completed and signed by the attending physician, and mailed to the employer within one week of the beginning of treatment. The treatment plan must include objectives, modalities, and frequency of treatment. *The initial treatment plan may not include more than 20 visits in the first 60 days. If more than 20 visits are required in the first 60 days, or more than four visits a month after the first 60 days, the physician shall document the need for services in excess of the guidelines in the written treatment plan.*

H.B. 352, 15th Legis.2d Sess., § 9 (emphasis added).

The emphasized language was amended in the House Judiciary Committee on April 25, 1988. The committee discussed three proposals. The third proposal was accepted. In substance it is identical to AS 23.-30.095(c) as enacted. The discussion conducted in the committee meeting made it clear that the committee members believed that the amended language delegated responsibility to the Board to set treatment standards and the Board had authority to set the same standard that had previously appeared in the bill. Representative Cotton asked:

> So, basically we've just passed the buck to the Work Comp Board to set up the frequency standard rather than do it by statute. We at one point saw in this bill 20 and 60. Now we're saying the board shall establish standards for frequency of treatment. They may say 20 and 60, but we're just passing the ball to them. Is that we're doing here?
>
> CHAIRMAN: That would be the impact of this amendment, yeah. . . .

Representative Navarre spoke, pointing out that the Board would have discretion to set multiple standards:

> The only reason that I would, I guess, feel a little more comfortable with that [the amended language] is that I think that different forms of rehabilitation

have different frequencies and this would allow them the discretion, since they deal with all the time, to come up with some standards that would be more appropriate, I think, than just simply an arbitrary 20/60 number.

. . . .

> UNIDENTIFIED VOICE: Well, there's other proposals. They would prefer having the 20/60 written in the statute. We had a long discussion on the committee about whether we should write that in or not. This is kind of a compromise to come up and say the board shall adopt some regulations on these, and put it in regulation rather than in the statute.

Later on in the committee's deliberations, Representative Taylor spoke in response to a comment that the Board would have difficulty in coming up with regulations:

> Well, I disagree. I—unless there's somebody here from the board (indiscernible) maybe Jackie (indiscernible) comment on that, but my thought on it is, the board's got 20 some years now of experience in working with this, and the main reason that the board wanted some definitive language in here was that they had seen problems. And I think the only way they could see a problem is if they have seen a lot of cases from which they kind of got a feel for how many weeks of treatment it should take and all of a sudden the guy comes in with very similar symptoms and problems (indiscernible) just flies off. So I think the board's in a very good position and I'm hoping the board will come up with a whole series of frequencies of treatment standards for various, maybe, professions and kinds of injuries, and so on, that will give a flexible standard that they can change by regulation frequently if they need to as opposed to a binding (indiscernible) set in statute. I think it's more workable, although it requires the board (indiscernible) kind of tough decision.

In summary, it seems that while some of the committee members hoped that the Board would come up with multiple standards for various injuries, they left the

decision as to whether to promulgate single or multiple standards to the discretion of the Board. We conclude, therefore, that the single standard regulation is not inconsistent with the statute.

The superior court's decision that the Board's continuing treatment standards conflict with AS 23.30.095(c) is REVERSED and this case is REMANDED to the superior court for further proceedings.