**MUNICIPALITY OF ANCHORAGE,**
Appellant,

v.

**Lisa K. SUZUKI; and Dong Joon Lim, f/k/a Dong J. Yim, individually and d/b/a Black Angus Inn, Appellees.**

No. S–9657.

Supreme Court of Alaska.

Feb. 8, 2002.

---

**26.** *See* AMC 21.55.030(C).

Dennis A. Wheeler, Assistant Municipal Attorney, and William A. Greene, Municipal Attorney, Anchorage, for Appellant.

Richard A. Weinig, Pletcher, Weinig, Fisher & Dennis, Anchorage, for Appellee Dong Joon Lim.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Alaska Statute 09.55.275 requires a municipality to obtain preliminary approval of a replat before an eminent domain acquisition that results in a "boundary change." Because we hold that a "boundary change" results when a municipality takes an easement that is not coextensive with the property lines and that functionally interferes with the landowner's use, the statute required the Municipality of Anchorage to obtain preliminary approval of replats showing the easements involved here. We therefore affirm the superior court decision requiring the municipality to seek replat approval.

## II. FACTS AND PROCEEDINGS

The Municipality of Anchorage filed a declaration of taking against Dong Joon Lim, the owner of the Black Angus Inn. In a separate proceeding it filed a complaint for condemnation against Lisa Suzuki, the lessee of a Texaco service station. In each case the municipality sought an easement in perpetuity on the affected parcel as part of a project to improve Fifteenth Avenue. The easement taken has forced Black Angus to demolish part of two hotel buildings, at a loss of twenty-two hotel rooms. The easement taken will require the destruction or movement of one of the Texaco station's gasoline dispensing islands.

Lim and Suzuki argued to the superior court that AS 09.55.275 required the municipality to obtain "preliminary approval of a replat" because each of the takings "result[ed] in a boundary change." Alaska Statute 09.55.275, entitled "Replat approval," provides:

> An agency of the state or municipality may not acquire property located within a municipality exercising the powers conferred by AS 29.35.180 or 29.35.260(c) that results in a boundary change unless the agency or municipality first obtains from the municipal platting authority preliminary approval of a replat showing clearly the location of the proposed public streets, easements, rights-of-way, and other taking of private property. Final approval of replat shall be similarly obtained. However, if a state agency clearly demonstrates an overriding state interest, a waiver to the approval requirements of this section may be granted by the governor. The platting authority shall treat applications for replat made by state or local governmental agencies in the same manner as replat petitions originated by private landowners.

The municipality asserted in response that the phrase "boundary change" as used in the statute is a term of art that refers exclusively to changes in the boundary of a fee simple estate, and that the phrase consequently does not include creation or expansion of easements.

The superior court consolidated the two cases "for the limited purpose of deciding the issue of whether the Municipality was required by AS 09.55.275 to process a replat prior to condemning the public use easements in each case." The superior court noted that the legislative context of AS 09.55.275 reveals that its "purpose is to ensure that land acquisitions by condemning agencies ... comply with all local planning and zoning ordinances and local regulations in the same manner and to the same extent as other landowners." The court held that the interpretation of boundary change most consistent with the text of the stat-

ute and most consistent with the purpose of platting in general is that a boundary change is any change of a boundary lot line, easement, right-of-way, or other acquisition, in order to provide that a platting board can review and make preliminary approval of an acquisition ... consistent with local land use planning laws.

Although the superior court held that preliminary plat approval was required by AS 09.55.275, it also found that applying the platting requirement retroactively would cause the municipality undue hardship because the resulting delay would jeopardize federal funding and raise construction costs. The court therefore determined that the appropriate remedy for these cases was requiring the municipality to apply for a replat "in a short period of time." The record does not reflect whether the municipality has complied with this order, and Appellee Dong Joon Lim implies that it has not.[1] The municipality appeals from the superior court's holding that AS 09.55.275 requires preliminary replat approval for easements.

## III. DISCUSSION

### A. Standard of Review

 We apply our independent judgment to the interpretation of a statute that does not "implicate an agency's special expertise or determination of fundamental policies."[2] As this case presents a question of first impression, our " 'duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[3] In the absence of a definition of "boundary change" in AS 09.55.275, we use our independent

judgment to determine the intent of the legislature in using this phrase.[4] "[A] grant of the power of eminent domain is to be strictly construed against the condemning party and in favor of the property owner...."[5]

### B. A Taking that Is Not Coextensive with the Property Line and that Functionally Interferes with the Landowner's Exclusive Use Is a "Boundary Change."

 We construe the meaning of a statute by looking at "the meaning of the language, the legislative history, and the purpose of the statute in question."[6] Our goal " 'is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others.' "[7] We hold that an easement that is not coextensive with the property owner's property line and that functionally interferes with the landowner's exclusive use is a boundary change under AS 09.55.275.

### 1. The plain meaning of "boundary change" supports the landowners' interpretation.

 In interpreting a statute, we have rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach.[8] "The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[9] The language of a statute is "construed in accordance with [its] common usage," unless the word or phrase in question has "acquired a peculiar meaning, by virtue of statutory definition or judicial construc-

1. Appellee Lisa K. Suzuki has not filed a brief.

2. *Cissna v. Stout*, 931 P.2d 363, 366 (Alaska 1996) (citing *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1241 (Alaska 1995)).

3. *Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996) (quoting *Foreman v. Anchorage Equal Rights Comm'n*, 779 P.2d 1199, 1201 (Alaska 1989) (citation omitted)).

4. *Id.* (citing *Alaska State Comm'n for Human Rights v. State*, 796 P.2d 458, 460 (Alaska 1990)).

5. *Bridges v. Alaska Hous. Auth.*, 349 P.2d 149, 154 (Alaska 1959) (citation omitted).

6. *Muller*, 923 P.2d at 787.

7. *Id.* (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987)).

8. *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982) (citing *State, Dep't of Natural Res. v. City of Haines*, 627 P.2d 1047, 1049 n. 6 (Alaska 1981)).

9. *Muller*, 923 P.2d at 788 (citing *Anchorage Sch. Dist. v. Hale*, 857 P.2d 1186, 1189 (Alaska 1993)).

tion."[10] We presume that every word in the statute was intentionally included, and must be given some effect.[11] In ascertaining the plain meaning of the statute, we refrain from adding terms.[12]

■ The phrase "boundary change" is not defined in AS 09.55.275 or elsewhere in the Alaska Statutes.[13] It has not acquired a particular meaning through judicial construction. Although the municipality and the landowners have cited cases that use "boundary" in a manner consistent with their respective positions, these usages do not control our interpretation. We have no reason to think that the legislature intended to use "boundary" in the narrow sense urged by the municipality.

■ "Boundary" is commonly defined as "[s]omething indicating a border or limit."[14] BLACK'S LAW DICTIONARY defines "boundary" as:

> *Every separation,* natural or artificial, *which marks the confines or line of division of two contiguous properties.* Limits or marks of enclosures if possession be without title, or the boundaries or limits stated in title deed if possession be under a title. *See also* Land boundaries; Metes and bounds; Plat map.[15]

A boundary is a separation that marks the limits of property. To the extent that the municipality thinks the statute does not apply to an easement, we disagree. Easements are property:

> Property. That which is peculiar or proper to any person; that which belongs exclusively to one. In the strict legal sense, an aggregate of rights which are

guaranteed and protected by the government. The term is said to extend to every species of valuable right and interest. . . .

> The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. *It extends to every species of valuable right and interest, and includes real and personal property, easements, franchise, and incorporeal hereditaments, and includes every invasion of one's property rights by actionable wrong.*[16]

Easements also have limits in the physical and measurable sense. These easements certainly do. One of them currently extends through the former location of twenty-two of the Black Angus Inn's rooms, and the other extends through the former location of a gasoline dispensing island. And the limits have certainly changed. We think the plain meaning of "boundary change" includes an easement that functionally interferes with the owner's exclusive use, as do the easements at issue in this case. The municipality has failed to demonstrate that the word "boundary" *must* be read as holding a more particular meaning.

■ It is a canon of statutory construction that the reading of the statute should not render any of its sections meaningless.[17] The landowners argue that the municipality's interpretation renders the final clause of the first sentence meaningless. They reason that if replat were only required for bound-

---

10. *Id.* (citing *Tesoro Alaska Petroleum Co.*, 746 P.2d at 905).

11. *Alaska Transp. Comm'n v. AIRPAC, Inc.*, 685 P.2d 1248, 1253 (Alaska 1984).

12. *Cf. Hickel v. Cowper*, 874 P.2d 922, 927–28 (Alaska 1994) ("Our analysis of a constitutional provision begins with, and remains grounded in, the words of the provision itself. We are not vested with the authority to add missing terms or hypothesize differently worded provisions in order to reach a particular result.").

13. The phrase "boundary change" is used in various Alaska statutes, but is not defined. *See* AS 09.55.275; AS 15.13.010, .400 ("boundary" is

not included among definitions); AS 29.06.040, .450; AS 44.33.812, .822, .826, .828.

14. WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 193 (1994).

15. BLACK'S LAW DICTIONARY 186 (6th ed.1990) (emphasis added).

16. BLACK'S LAW DICTIONARY 1216 (6th ed.1990) (emphasis added) (citations omitted).

17. *Alaska Transp. Comm'n*, 685 P.2d at 1253.

ary changes of fee simple interests, it would be unnecessary to require that the replat show "clearly the location of the proposed public streets, easements, right-of-ways, and other taking of private property." [18] They note that the use of the term "proposed" proves that "the replat must show that which will be acquired, not that which has already been acquired." We agree.

The municipality argues that rights-of-way are not limited to easements, but include fee simple interests. The municipality concludes from this that the final clause of section .275 is not rendered meaningless by the municipality's construction. But this argument ignores the inclusion of "easements" in the statute's list of interests that the replat must show clearly. Even though a right-of-way can refer to a fee simple estate, the statute requires that "proposed ... easements ... and other taking of private property" be shown in the replat.[19]

 The municipality argues that the landowners' interpretation fails to give effect to the statutory phrase "that results in a boundary change." We can contemplate hypothetical situations in which an interest is taken without causing a boundary change, thus giving meaning to the statute's limiting language "that results in a boundary change." For example, no boundary change occurs if the condemning authority takes the entire parcel in fee simple, if the proposed easement will be coextensive with the parcel's existing boundaries, or if the municipality broadens the scope of an existing easement without altering the easement's boundaries. A temporary easement does not result in a boundary change. The limitation thus retains meaning, even assuming the circumstances it excludes are rare.

If the legislature had intended the meaning suggested by the municipality, it could have easily tied the replat obligation to fee simple interests. It alternatively could have defined "boundary change" to exclude easements. That it did neither suggests, but does not compel, the conclusion that it intended "boundary change" to include easements.

Given that the plain meaning of "boundary change" encompasses changes in easement borders, such as those in the case now before us, we will apply the plain meaning of the language absent convincing evidence that the legislature intended a different result.[20]

### 2. Legislative intent does not compel a different result.

The legislative history for AS 09.55.275 is sparse. The primary source of legislative purpose for AS 09.55.275 is thus the act itself.

The municipality argues that the act's purpose is "abundantly clear"; it is to require coordination between state and local governments. The municipality concludes that Suzuki and Lim's interpretation of the statute does nothing to further this purpose. We agree that this clear purpose is evidenced by the session law. The act is introduced as "AN ACT Relating to state compliance with local planning, platting and zoning ordinances." [21] Section one of the act amends AS 35.10.020:

> CONSULTATION WITH MUNICIPAL PLANNING COMMISSIONS. Before the construction of a public works in a municipality, the department shall confer with the planning commission of the municipality to determine that the welfare of the public is properly protected and its agencies and zoning ordinances and the local regulations in the same manner and to the same extent as other landowners. However if a state agency clearly demonstrates an overriding state interest, a waiver to the compliance requirement may be granted by the governor.[22]

The language of section AS 09.55.275 makes it clear that the act was intended to require the state to confer with local governments on projects. Section two amends AS 09.55 by

---

18. AS 09.55.275.

19. *Id.*

20. *Muller,* 923 P.2d at 788.

21. Ch. 96, SLA 1975.

22. Ch. 96, § 1, SLA 1975.

adding the replat approval section, quoted above in Part II.[23]

This act is evidence that the legislature intended the statute to be read broadly to achieve coordination between the state and local governments. If it had been the state rather than the municipality improving the road, this purpose would have led us to interpret "boundary change" broadly, to require coordination and cooperation between state agencies and local governments. Because the statute imposes the same limitation on the state and municipalities,[24] interpreting "boundary change" to include easements is more consistent with the legislative intent than the narrow interpretation the municipality proposes.

The municipality argues that the purpose of plat approval is to describe the land and the lines dividing the land so it can be easily transferred. Suzuki and Lim argue that replatting provides a pictorial description of the easement in relation to the rest of the property. The municipality responds that platting is not the best or most accurate way to describe an easement. The municipality would implicitly limit the statute's purpose to achieving benefits that cannot be effected any other way. We reject this as a test for intent. Replatting is one way to describe or explain an easement, and replatting aids transferability. Replatting also provides some degree of local control, as AS 09.55.275 envisions. These purposes are consistent with our reading of the statute.

The superior court's ability to change the scope of the taking may require a change in the plat; the municipality argues that this makes a preliminary plat wasteful. But the preliminary replat requirement is potentially just as wasteful if the taking is in fee simple.

The municipality also argues that reading the statute broadly will encompass too many takings, including takings for temporary easements. But we think that most temporary takes would not be boundary changes under AS 09.55.275. The municipality's policy arguments concerning the efficiency of the statute are better addressed to the legislature than to us. They shed little light on the meaning of the plain language or the intent of the legislature.

### 3. We do not consider the municipality's new arguments on appeal.

The municipality argues that the local government has been provided with a forum to protect its interests through the Anchorage Metropolitan Area Transportation Study planning and procedures. But the municipality did not make this argument below, so we do not consider it here.[25]

The municipality also argues that AS 09.55.275 does not apply to home rule municipalities, and that because it is a home rule municipality[26] it is not subject to section .275. Because the municipality did not preserve this issue in the superior court, we do not reach it here.[27] We can consider unpreserved issues for plain error, but it is not apparent that the superior court plainly erred in failing to resolve this appeal on a ground the municipality now argues for the first time. We also note that AS 09.55.275 applies both to the state and to municipalities. It is not obvious why the legislature might have chosen to make section .275 applicable to the state itself and to all municipalities other than home rule municipalities.

Moreover, it would seem that the word "municipality" must be given a consistent meaning throughout section .275.[28] If the

**23.** Ch. 96, § 2, SLA 1975, codified as AS 09.55.275.

**24.** AS 09.55.275 ("An agency of the state or municipality may not acquire property located within a municipality exercising the powers [of condemnation] that results in a boundary change unless the agency *or* municipality first obtains from the municipal platting authority preliminary approval of a replat ....") (emphasis added).

**25.** *Gates v. City of Tenakee Springs,* 822 P.2d 455, 460–61 (Alaska 1991) (citing *Wickwire v. McFadden,* 633 P.2d 278 (Alaska 1981)).

**26.** Anchorage Municipal Charter art. III, § 3.01; *see also Area G Home & Landowners Org. v. Anchorage,* 927 P.2d 728, 729 & n. 1 (Alaska 1996).

**27.** *Gates,* 822 P.2d at 460–61.

**28.** *Alaska Legislative Council v. Knowles,* 21 P.3d 367, 372 (Alaska 2001) (holding that term must

statute does not require a home rule municipality to obtain preliminary approval of a replat, it would seem to follow that the state would not be obliged to obtain preliminary approval of a replat if the property the state proposed taking was located in a home rule municipality. This would mean that the statute would not require the state to obtain approval from the Municipality of Anchorage if its proposed taking were within the municipality's boundaries.

## IV. CONCLUSION

Because the taking of an easement that is not coextensive with the landowner's property line and that functionally interferes with an owner's exclusive use creates a boundary change under AS 09.55.275, we AFFIRM the superior court's holding that AS 09.55.275 required the municipality to seek preliminary replatting for the two easements at issue here.

CARPENETI, Justice not participating.

be read consistently throughout) (citing *Cenarrusa v. Andrus,* 99 Idaho 404, 582 P.2d 1082, 1090 (1978) ("Obviously the word item can not be given different meanings within the same sentence.")).