**Elizabeth ROLLINS, d/b/a Alaska 1910, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF REVENUE, ALCOHOLIC BEVERAGE CONTROL BOARD, Appellee.**

**No. S–8601.**

Supreme Court of Alaska.

Nov. 12, 1999.

---

**1.** Op. at 200.

**2.** Alaska R. Civ. P. 90.3 Commentary III.E.

**3.** Op. at 200.

Elizabeth Rollins, North Pole, *pro se.*

Linda L. Kesterson, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for appellee.

Before EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Elizabeth Rollins appeals the decision of the superior court affirming the Alcoholic Beverage Control Board's decision to deny

her renewal of an alcohol beverage dispensary license because she failed to meet the annual operational requirements specified by statute. We affirm, although we grant leave to Rollins to pursue further relief in the superior court.

## II. *FACTS AND PROCEEDINGS*

In late 1990 Elizabeth Rollins applied to the Alcoholic Beverage Control Board to transfer a beverage dispensary license (liquor license) to herself. Rollins indicated she had "no premises" on the application as it was her intention to open an "early era" restaurant when she found the right location. The Board approved the transfer in September 1991. In December 1991 the Board granted Rollins a waiver of the 30–day annual operating requirement for the 1991 calendar year, and shortly thereafter granted Rollins's application for a renewal of her license without premises for 1992.

Rollins applied to transfer the license to a property she owned at 1403 Old Richardson Highway in North Pole in October 1992. On her application, she stated it was her intent to open a temporary facility called the "Alaska 1910" until she could find a better location. Upon notification by Board staff that she would need to apply for another waiver from the annual operating requirement if the license had not been operated for 30 days in 1992, she submitted a second waiver request. The Board approved the location transfer and waiver in March 1993; it also renewed her license for 1993.[1] Shortly thereafter, Rollins was informed by Board staff that she would be issued a full license to operate when her premises were approved by the Department of Environmental Conservation (DEC) and the Fire Marshal's Office.

In May 1993, Rollins began renovations on the structure at 1403 Old Richardson Highway to prepare for its opening as a bar. She had the premises inspected by an employee of DEC on November 3, 1993. The inspector informed Rollins that the premises needed certain improvements prior to receiving the Department's approval to operate, including new surfaces for the walls, ceilings, and floor, additional sinks, separate male and female restrooms, and handicap access to comply with the Americans with Disabilities Act.

In November Rollins submitted another waiver request of the 30–day operating requirement for the 1993 calendar year. In her request, she indicated that she placed the license on the Old Richardson Highway building with the intention to estimate the cost of a possible rehabilitation of the building, and that she continued to seek a more suitable location. She further indicated that she had mistakenly thought she could obtain a temporary permit to operate from DEC and would not have to meet all of the building requirements. The Board approved her third waiver and the renewal of her license for 1994–95.

Rollins did not open her bar in 1994. She stated she had anticipated purchasing another location in the summer of 1994 but the purchase fell through, so she again decided to open the bar at 1403 Old Richardson Highway. However, the Richardson Highway building was burglarized and a new boiler was stripped, causing the pipes to freeze. In addition, new sinks, a new urinal, and new door were stolen. According to police reports, the property had a history of being vandalized and burglarized. Rollins could not locate new equipment and was unable to meet the necessary health and sanitation requirements in time to open the bar by December 1. In December 1994 Rollins requested her fourth waiver of the 30–day operating requirement, and in her request indicated that she intended to open the bar before the end of 1994. The Board granted this waiver.

Rollins did not open her bar in 1995. In April of 1995 her building was again burglarized and Rollins stated the heat and water systems were damaged when the burglars tried to remove the boiler. She decided to sell the building and liquor license and found a purchaser. Unfortunately, the intended buyer backed out of the agreement upon

---

1. Prior to July 1995, a licensee was required to renew his or her license annually. *See* former AS 04.11.540. After July 1, 1995, a licensee is required to renew his or her license every two calendar years. *See* AS 04.11.540.

learning from a *Fairbanks Daily News Miner* article that Rollins's property was located within a two-square mile area that the DEC had declared a public health alert area due to groundwater contamination.

After the deal fell through, Rollins once again decided to open the bar at that location and began to repair the heating system damaged in the April 1995 break-in and to meet other health and safety requirements. However, she asserted that she put the renovation on hold when her son was diagnosed with cancer.

In December 1995 Rollins requested her fifth waiver of the 30–day annual operating requirement for the 1995 calendar year. In her request she indicated that she made an attempt to ready her structure but DEC would not issue her a health permit. She asserted that new equipment installations required by DEC involved extensive plumbing renovations and she would not be able to complete this work prior to December 1.

The Board denied this request. Additionally, because the waiver of the annual operating requirement was necessary for the renewal of Rollins's liquor license,[2] the Board also denied Rollins's license renewal. Rollins met with the Board at an informal conference in April 1996. No settlement was reached at this meeting and the Board affirmed its earlier decision to deny Rollins's waiver. A formal hearing was then held in Fairbanks in October 1996, at which Rollins represented herself *pro se.*

In November 1996 the hearing officer submitted his proposed decision to the Board, affirming the Board's earlier action. The Board adopted the decision. Rollins appealed to the superior court, which affirmed the Board's decision. In February 1998 Rollins filed a Civ. R. 60(b)(2) motion for relief from judgment, apparently based on new evidence, which was denied on March 17, 1998. This appeal followed.

## III. DISCUSSION

Rollins essentially makes six arguments on appeal: (1) the Board exceeded its authority in adopting 15 Alaska Administrative Code 104.170 which governs the waiver of the 30–day annual operating requirement; (2) the Board erroneously concluded that she had licensed premises subject to the operating requirement; (3) the Board erroneously found that her premises were neither condemned nor substantially destroyed and that she was not, therefore, entitled to a fifth-year waiver of the operating requirement; (4) the Board denied her equal protection under the Alaska Constitution; (5) her rights under the Alaska Constitution to due process were violated because her license was revoked in an administrative rather than judicial proceeding before a jury, and by the hearing officer's failure to compel the state to produce her requested discovery; and (6) the state withheld discovery and misrepresented facts to her and the superior court. We address each of her arguments in turn.

### A. Standard of Review

■■■ We give no deference to the decision of the superior court where it acts as an intermediate appellate court; rather, we independently review the merits of the administrative action.[3] There are four principal standards of review for administrative decisions: the "substantial evidence" test for questions of fact; the "reasonable basis" test for questions of law involving agency expertise; the "substitution of judgment" test for questions of law where no agency expertise is involved; and the "reasonable and not arbitrary" test for review of administrative regulations.[4] Finally, this court applies its independent judgment to questions of constitutional law.[5]

### B. 15 AAC 104.170 Is a Valid Regulation.

■ Rollins argues that the Board exceeded its authority when it adopted 15 AAC

---

2. *See* AS 04.11.330(a)(3).

3. *See Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992) (citations omitted).

4. *See id.*

5. *See State v. Anthony,* 810 P.2d 155, 156–7 (Alaska 1991) (citations omitted).

104.170 [6] because the regulation is more restrictive than AS 04.11.330(a)(3),[7] the statute providing for the 30–day annual operating requirement and exceptions to it. In addition, she argues that the regulation has no relation to "the health, welfare, or safety of the citizens of the state." We disagree.

Alaska Statute 04.11.330(a)(3) provides that a license renewal shall be denied if the applicant has not operated the licensed premises for 30 eight-hour days during each of the two preceding calendar years.[8] However, the Board may grant a waiver if it determines that the licensed premises are "under construction or cannot be operated through no fault of the applicant." To implement this statutory provision, the Board adopted 15 AAC 104.170. This regulation provides that the Board will deny a third or subsequent request for waiver unless the licensed premises were not operated because the premises are "condemned or substantially destroyed." Rollins's contention that this regulation is more restrictive than AS 04.11.330(a)(3) is correct. Under 15 AAC 104.170, the Board will deny a third waiver application unless the premises are condemned or substantially destroyed, regardless of the broader excep-

tions provided in statute. Nevertheless, the regulation is valid because it is reasonably related to the statutory objectives of AS 04.11.330.

The legislature provided a broad grant of authority to the Board to enact regulations "consistent" with and to carry out "the purposes of" the alcoholic beverage statutes in a manner that will protect "public health, safety, and welfare." [9] This grant of power to promulgate rules and regulations is "so complete that there would be inconsistency only if the regulation bore no reasonable relation to the statutory objectives." [10]

In enacting AS 04.11.330, the legislature indicated that it wanted licenses to be operated 30 days annually except under two limited circumstances: (1) the licensed premises are under construction; and/or (2) the licensed premises cannot be operated through no fault of the applicant.[11] The regulation furthers this objective by defining the circumstances under which premises could be considered to still be under construction or not operated through no fault of the licensee for a third consecutive year. While the broader "under construction" language of AS 04.11.330(a)(3) is excluded from 15 AAC 104.170(e), the

---

6. 15 AAC 104.170 states:

WAIVER OF ANNUAL OPERATING REQUIREMENT AND MINIMUM OPERATING REQUIREMENTS. (a) Except as provided in this section, the board will deny an application for renewal of a license if the licensed premises were not operated for the time required by AS 04.11.330(a)(3)....

(b) A licensee may apply to the board, requesting that the board waive the operating requirement of AS 04.11.330(a)(3).... Under AS 04.11.330(a)(3), the board will determine whether, through no fault of the licensee or because the premises are under construction, the licensed premises could not be operated for the required time during the preceding year.
....

(e) *The board will, in its discretion, deny a third or subsequent consecutive application for waiver unless the licensee clearly shows that the licensed premises were not operated because the premises were condemned or substantially destroyed by any cause.* If the premises identified on an applicant's license are not leased or owned by the licensee, the third or subsequent application will, in the board's discretion, be denied. Additionally, a third or subsequent consecutive application for waiver that does not identify a licensed premises location will, in the board's discretion, be denied.

....
(g) If an application for waiver is denied, an application for license renewal for the succeeding license period will be denied by the board under AS 04.11.330(a)(3).
(Emphasis added.)

7. AS 04.11.330(a)(3) provides:

(a) An application requesting renewal of a license shall be denied if ...
(3) the applicant has not operated the licensed premises for at least 30 eight-hour days during each of the two preceding calendar years, unless the board determines that the licensed premises are under construction or cannot be operated through no fault of the applicant[.]

8. Prior to December 31, 1993, an applicant need only have operated his or her license for 30 days during the previous calendar year. *See* the former AS 04.11.330(a)(3).

9. AS 04.06.100.

10. *Boehl v. Sabre Jet Room, Inc.*, 349 P.2d 585, 588 (Alaska 1960).

11. *See* AS 04.11.330(a)(3).

Board explicitly retains discretion to grant a waiver from the operational requirement if the premises were substantially destroyed and required new construction. More importantly, this regulation furthers the legislative objective that licenses be operated by precluding the situation where a licensee could claim his or her premises are under construction year after year, keeping the license from operation.

In sum, the regulation is reasonably related to the statutory purpose of AS 04.11.330 and within the Board's authority to promulgate. Therefore, 15 AAC 104.170 is valid.

### C. Rollins Had Licensed Premises for Purposes of AS 04.11.330(a)(3).[12]

Rollins next argues that she was not subject to the annual operating requirement of AS 04.11.330(a)(3), which only applies to "licensed premises," because she was never issued a license to operate at 1403 Old Richardson Highway. Specifically, she relies on AS 04.21.080(b)(10) for the proposition that "licensed premises" cannot exist unless a license to operate has been issued.[13]

The state counters that Rollins's reading would render the statute invalid and related statutory provisions meaningless. Rather, the state argues, the statute should be read in light of its purpose and the overall context of Title 4, which governs the sale and distribution of alcoholic beverages. The Board agreed and concluded that the definition of "licensed premises" in AS 04.21.080(10) "in the case of a pending application for a license that has not yet been issued, reasonably may

be understood to encompass the premises for which a license may be issued." We agree.

In construing statutes, our goal is "to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others."[14] Basic principles of statutory construction "militate against interpreting a statute in a manner that renders other provisions meaningless."[15] Contradictions should be harmonized.[16] Here, Rollins's statutory interpretation is unpersuasive because it renders an express exception superfluous and vitiates the objective of the statute.

The legislature expressly provided an exception to the annual operating requirement for premises under construction.[17] In addition, the legislature has mandated that the Board cannot issue a license to operate until the licensee receives public health and safety approvals.[18] If the building is under construction, such approvals will not have been issued and the licensee will not have been issued a license to operate. If Rollins's interpretation were correct—that AS 04.11.330(a)(3) does not apply to licensees who have not been issued a license to operate—there would be no need for an express exception. This is not a harmonious reading of the statute.

More importantly, Rollins's reading of the statute contravenes the legislative purpose inherent in the statutory framework governing the sale and distribution of alcohol. The sale and distribution of alcohol in Alaska are thoroughly and strictly regulated by the

---

**12.** This court will substitute its judgment for that of the agency where the case concerns "statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience." *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971).

**13.** AS 04.21.080(b)(10) defines "licensed premises" as:

> any or all designated portions of a building or structure, rooms or enclosures in the building or structure, or real estate leased, used, controlled, or operated by a licensee in the conduct of business for which the licensee is licensed by the board at the specific address for which the *license is issued* [.]

(Emphasis added.)

**14.** *Forest v. Safeway Stores*, 830 P.2d 778, 781 (Alaska 1992) (citations omitted).

**15.** *M.R.S. v. State*, 897 P.2d 63, 66 (Alaska 1995).

**16.** *See In re E.A.O.*, 816 P.2d 1352, 1357 (Alaska 1991).

**17.** *See* AS 04.11.330(a)(3).

**18.** *See* 15 AAC 104.155, which provides:

> Upon approval of an application for a new license or the renewal or transfer of an existing license, receipt by the board of necessary public health and public safety approvals and completion of any inspection considered necessary by the director, the director will issue an appropriate license.

state.[19] The number and type of liquor licenses are limited by population and geographical area.[20] In addition, all licenses must be attached to specific premises.[21] Reading AS 04.11.330(a) in conjunction with these statutes, it becomes apparent that the legislature intended to prevent a licensee from holding onto one of a limited number of licenses without operating it, at least beyond a reasonable time necessary to construct or otherwise establish premises. This objective maintains the character of the license as a license to conduct business rather than a financial asset; and, as the state suggests, maintains a certain number of facilities in the community where people can purchase alcohol.

Under Rollins's statutory interpretation, a licensee could hold a license indefinitely if that licensee was never issued the physical license to operate.[22] This is contrary to the purpose and scheme of the statute.

Finally, Rollins argues that recognizing hers as "licensed premises" for purposes of AS 04.11.330(a)(3) leads to a conflict between 15 AAC 104.170 and 15 AAC 104.195, yielding absurd results.[23] This argument is meritless; it results from a misunderstanding of the law. Under 15 AAC 104.195, a licensee must surrender his or her license to the director at the Alcoholic Beverage Control Board when his or her premises are lost, surrendered, or the licensee ceases conducting business. The regulation further provides that the director shall reissue the license when the business is resumed. This regulation presumes a license to operate the premises has been issued. If a license has not been issued to operate, there is no license to surrender. The purpose is to require an operating licensee to surrender his or her license when he or she can no longer operate in compliance with the law.[24] Rollins asserts she should have been allowed to surrender her license rather than suffer the loss of large application fees and the ultimate loss of her license. This would be pointless. As the state points out, a surrendered license is still subject to the annual operating requirements of AS 04.11.330(a)(3) and 15 AAC 104.170.

In conclusion, Rollins's statutory interpretation is strained and contravenes the statute's purpose. Accordingly, we hold that Rollins had "licensed premises" for purposes of the annual operating requirement.

D. *Substantial Evidence Supports the Board's Determination that Rollins's Premises Were Not Substantially Destroyed, Precluding Her from Obtaining a Fifth Waiver of the Annual Operating Requirement.*[25]

■ Rollins also challenges the Board's finding that her premises were not substantially destroyed. She asserts that vandalism and theft of parts and fuel from her boiler in November 1994, February 1995, and April 1995 resulted in frozen water lines and damage throughout her entire heating and water system. This damage, she argues, along with thefts of other property, caused her premises to become substantially destroyed.[26] The hearing officer found, after

19. *See* AS 04.11.010–04.16.220.

20. *See* AS 04.11.400–420.

21. *See* AS 04.11.260(a)(2).

22. *See* 15 AAC 104.155, supra, note 17.

23. 15 AAC 104.195 provides:
 Within 10 days after the loss or surrender of the licensed premises, or if a licensee ceases to conduct business upon the licensed premises for a period expected to continue for one month or more, the licensee shall inform the director and surrender the license to the director. The license will be reissued upon request when the conduct of business is resumed or upon transfer of the license.

24. *See* AS 04.21.030(2); AS 04.11.580(b).

25. In reviewing an agency's factual determinations, this court looks to the record as a whole to see if "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists. The court does not choose between competing inferences, nor evaluate the strength of the evidence, but merely notes its presence. *Handley*, 838 P.2d at 1233 (citations omitted).

26. Rollins had argued at the administrative hearing and in the superior court that the DEC water alert effectively condemned her property. However, she failed to raise this in her points on appeal or argue it in her brief. Accordingly, the issue is waived. *See Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991); *Oceanview Homeowners Ass'n, Inc. v. Quadrant*

an on-site visit, that although Rollins established that incidents of vandalism had reduced the value of her property and adversely affected her ability to use her property for limited periods of time, she had not established that her premises were substantially destroyed in 1995 as "that term is commonly understood and used" in the regulations. Because substantial evidence in the record supports this factual finding, we will not upset it.

Black's Law Dictionary defines "destroy" as an "act which renders the subject useless for its intended purpose."[27] Webster's Dictionary defines the term "to ruin completely," "spoil," or "demolish."[28] "Substantially destroyed" would then require that the premises were substantially rendered useless for use as a bar—that they were substantially ruined, demolished, or spoiled. Criminal activity no doubt hampered Rollins's efforts to meet the health and safety requirements necessary to receive a license to operate. However, we note that Rollins does not assert that her premises were ever in a condition to receive a license to operate. Moreover, given the significant destruction that is required under the definition of "substantially destroyed," and the lack of evidence in the record indicating the premises were substantially destroyed, we will not overrule the Board's determination based on the hearing officer's on-site visit. Accordingly, we hold that sufficient evidence exists to sustain the Board's determination that Rollins failed to establish that her premises are substantially destroyed.

E. *The Board's Action Did Not Violate Rollins's Right to Equal Protection.*

 Rollins next asserts that the Board's action violated her right to equal protection because other bars that have engaged in more egregious violations of alcohol regulations and statutes have not lost their licenses. The hearing officer concluded that while this may be true "to the extent one considers other types of behaviors more serious than the violation of the failure to operate requirement," such judgments are neither determinative or relevant because the "[B]oard must enforce and apply its regulations as in effect." We agree.

In order to make a prima facie case that the Board selectively enforced the annual operating requirement in violation of Rollins's right to equal protection, Rollins would have to show that the Board intended to discriminate against her based on an arbitrary or unjustifiable classification.[29] Rollins had the initial burden of producing evidence demonstrating discriminatory intent. However, Rollins failed to offer any evidence of discriminatory intent or evidence to show that she was treated differently than other license holders who had violated the 30–day operating requirement. Her mere conclusory accusations of discrimination do not satisfy this burden.[30]

Rollins contends that she could not present such evidence because the state failed to respond to her discovery request and the hearing officer failed to intervene. This due process argument is addressed below. On the record before us, there is no merit to Rollins's equal protection argument.

F. *The Board Did Not Violate Rollins's Right to Procedural Due Process.*

Rollins also asserts two due process violations. First, she contends that she was entitled to a judicial proceeding before a jury to determine if her license would be revoked or, more accurately, not renewed. Second, she argues that the hearing officer should have compelled the state to provide her with discovery she requested, and that this failure denied her a fair hearing. We disagree with both contentions. Our review of the record indicates that Rollins was afforded the procedural due process to which she was entitled.

Constr. and Eng'g, 680 P.2d 793, 797 (Alaska 1984).

27. Black's Law Dictionary 535 (4th ed. 1968).

28. Webster's II New Riverside University Dictionary 368 (1988).

29. *See Gates v. City of Tenakee Springs*, 822 P.2d 455, 461 (Alaska 1991) (citing *Barber v. Municipality of Anchorage*, 776 P.2d 1035, 1040 (Alaska 1989)).

30. *See id.*

1. *The denial of a liquor license renewal in an administrative hearing does not violate the licensee's due process rights.*

 Rollins correctly contends that she has a property right in her license that is protected by the due process clause of the Alaska Constitution.[31] Her interest in the liquor license is "not merely a privilege subject to withdrawal or denial at the whim of the state," but is "of considerable value." [32] Before this property interest can be taken, due process requires that Rollins be provided with notice and an opportunity to be heard in a meaningful, impartial hearing.[33] However, under our case law, Rollins is not entitled to a judicial proceeding prior to the state's denial of her license renewal.

In *State v. Zerkel*, this court held that an individual is not entitled to a jury trial for the revocation of a license to do business when the basis for the revocation is not criminality but fitness or other public considerations unrelated to guilt or innocence for a crime.[34] Here, criminality was not the basis for the Board's denial of Rollins's license renewal; rather, it was her failure to operate the license as required by statute and regulation. In *Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.*,[35] we held that due process merely required the Board to hold a hearing before it could suspend a liquor license. We specifically stated that the hearing need not . be elaborate, and the Board need not make written findings or even file a written opinion explaining its action so long as it reached its decision after hearing the appellant's presentation.[36] These cases control the disposition of this issue. Accordingly, Rollins was not entitled to a judicial proceeding with a jury trial prior to the Board's denial of her license renewal.[37] She received the procedural safeguards to which she was entitled; namely, adequate notice and an opportunity to be heard in a meaningful, impartial administrative hearing in full compliance with the Administrative Procedures Act.

2. *The hearing officer did not deny Rollins's procedural due process rights by failing to compel discovery from the state.*

 Rollins next contends that her due process rights were violated when the hearing officer failed to order the state to comply with her discovery request.[38] We disagree.

 A fair and meaningful hearing does entail adequate access to information requested in discovery.[39] If Rollins sought to compel discovery, and the hearing officer ignored her request, her right to due process may have been infringed. Thus, we must review the record to determine whether Rollins requested the hearing officer to compel

---

**31.** See *Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd.*, 524 P.2d 657, 659 (Alaska 1974); *see also Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 36 (Alaska 1980) (due process may be invoked as to the issuance of a business license); *Herscher v. State, Dep't of Commerce*, 568 P.2d 996, 1002 (Alaska 1977) (licensee had proprietary interest in hunting guide license protected under due process).

**32.** *Frontier*, 524 P.2d at 659–60.

**33.** See *Thorne v. State, Dep't of Public Safety*, 774 P.2d 1326, 1329 (Alaska 1989) (due process in a license revocation hearing requires a "meaningful hearing"); *Frontier*, 524 P.2d at 659 (due process requires notice and an opportunity to be heard prior to the taking of a valuable property right).

**34.** 900 P.2d 744, 753 (Alaska App.1995).

**35.** 524 P.2d at 659.

**36.** See *id.* However, it should be noted that when the Board denies an application for license renewal, AS 04.11.510(b)(1) requires the Board to inform the applicant in writing with a clear and concise statement of the reason for the denial. The Board must also inform the applicant of his or her right to an informal conference and, if still unsatisfied, the applicant's right to a formal hearing. *See id.* The Board complied with these requirements.

**37.** Of course, Rollins was entitled to and received judicial review of the Board's determination. *See* AS 44.62.560.

**38.** Rollins did not specifically identify this argument as a procedural due process issue. However, because it goes to the meaningfulness of the hearing, which entails considerations of fundamental fairness, it is properly analyzed as such. *See Thorne*, 774 P.2d at 1329; *Application of Peterson*, 459 P.2d 703, 711 (Alaska 1969).

**39.** See *Application of Peterson*, 459 P.2d at 711.

discovery and, if so, whether the hearing officer adequately addressed her request.

In July 1996, Rollins submitted the following request to the Board's counsel, Linda O'Bannon of the Attorney General's Office:

Please forward my ABC file. Also need information of number of Revoked Licenses [sic] over past 5 years & cause of loss.

Also number of suspensions & fines over same period and reason for discipline.

Need to know how many complaint[s] investigated and found valid, but action not taken for same period.

If research for information will take longer than 10 days, please advise, but do send my file immediately.

Shortly thereafter, O'Bannon instructed Board staff to forward a copy of Rollins's file to her, but to ignore the rest of the request as it involved legal issues which needed to be addressed. In August, the Board sent Rollins a memorandum which stated:

During the period from January 1990 to August 19, 1996 a total of 614 notices of violation were issued to licensed premises, within the state, for violations of Title 4 statutes.

If found to be a valid complaint some type of action was always taken by the enforcement or licensing staff to insure compliance. None of the valid complaints were dropped and no action taken.

During the same period a total of 3 liquor licenses were revoked and 19 suspended.

In September, Rollins complained to O'Bannon, with a copy faxed to the hearing officer, that the Board was deficient in replying to her request and that the discovery deadline set by the hearing officer had passed. Rollins further complained that the lack of information put her in an untenable position in preparing for the hearing in October. O'Bannon responded to Rollins, with a copy to the hearing officer, that she disagreed with the contention that there was any deficiency in the state's submission of discovery. Nevertheless, O'Bannon indicated that she would try to respond to Rollins's request and provided a list of witnesses. O'Bannon closed her letter by stating "[h]opefully this answers all your questions. If you have any further questions, please call me at [phone number] and I will try to address them."

Rollins did not contact O'Bannon again regarding discovery, nor did she bring any additional concerns to the hearing officer's attention, though she had adequate opportunity to do so. In addition, the correspondence between Rollins and the Board, copied to the hearing officer, reasonably indicated that the discovery issues were resolved. On this record, we do not find that the hearing officer was under an obligation to inquire about discovery, much less issue an order to compel the state to comply with Rollins's request. Accordingly, we hold that Rollins's due process rights to discovery were not violated by any action or inaction of the hearing officer.

G. *Rollins May Have a Valid Civil Rule 60(b)(3) Motion Based on Post–Appeal Actions of the Board.*

 Finally, Rollins argues that the Board provided misleading information to her from the onset of these proceedings and provided false information to the superior court on appeal. We cannot assess the validity of this claim, but Rollins should have the opportunity to pursue it.

In its brief to the superior court, the Board stated:

Rollins never made any comparison to actions of the Board against other licensees who failed to operate as required by AS 04.11.330(a)(3). (If she had, the record would show that other licensees have lost their licenses after waiver requests have previously been granted, for failure to operate the minimum time required when there was no condemnation of the premises or substantial destruction of the premises.)

After the superior court affirmed the Board's decision, Rollins filed a motion for relief from judgment under Alaska Civil Rule 60(b)(2). She argued that the Board withheld information from her because it could not make the assertions it had regarding other applicants in a similar situation if it did not keep records as it claimed post-trial in response to a freedom of information request

she filed. The Board responded that Rollins had not presented any new evidence justifying Rule 60(b)(2) relief. The court denied her motion on March 17, 1998. Rollins has not appealed this denial.

Subsequently, the Board's director wrote the following to a state legislator regarding Rollins's case, which Rollins attached to her brief to this court:

> [T]he present ABC Board has become stricter in enforcing the consecutive waiver policy. Unfortunately, Mrs. Rollins, d/b/a Alaska 1910, was the first one to be affected by this trend.

The apparent contradiction between the Board's representation in the superior court and the director's letter is disturbing. If Rollins's allegations are true, she might have a colorable basis to seek relief from judgment based on misrepresentation, under Alaska Civil Rule 60(b)(3). However, such motions must be made within one year of the judgment, which in this case was entered January 2, 1998. Therefore, such a motion would now be untimely.

However, the director's letter was sent after Rollins had appealed the Board's action to this court. She may have mistakenly thought she could raise this issue on appeal before us, rather than pursuing the proper procedure by filing a Rule 60(b)(3) motion in the superior court. We have in the past relaxed procedural requirements for *pro se* litigants.[40] We have stated that while the court is not required to "instruct a pro se

litigant as to each step in litigating a claim" as this would "compromise the court's impartiality,"[41] the court "should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[42] Because the director's letter was not written until after Rollins appealed to this court, and because she sought the allegedly withheld information from the onset of the adjudicative process and is *pro se,* we grant her leave to file a Rule 60(b)(3) motion within 45 days of the issuance of this opinion.[43] If she does so, the superior court must determine whether the state misrepresented facts to Rollins and to the court, entitling Rollins to additional discovery and a remand to the Board on the issue of selective enforcement.[44]

## IV. *CONCLUSION*

In sum, we conclude that 15 AAC 104.170 is a valid regulation; that Rollins has licensed premises for purposes of the annual operating requirement in AS 04.11.330(a)(3); and that the Board's determination that her premises were not substantially destroyed, thus precluding her from a fifth waiver of the operational requirement, is supported by substantial evidence. In addition, on the record before this court, we hold that her equal protection and due process rights were not violated. Therefore, we AFFIRM the superior court's decision upholding the Board's determination to deny her license renewal. However, we grant Rollins leave to file a Rule 60(b)(3) motion within 45 days of the

---

40. See *Collins v. Arctic Builders,* 957 P.2d 980, 982 (Alaska 1998) (citing *Breck v. Ulmer,* 745 P.2d 66 (Alaska 1987) and *Bauman v. State, Div. of Family & Youth Services,* 768 P.2d 1097 (Alaska 1989)).

41. *Id.* (quoting *Bauman,* 768 P.2d at 1099).

42. *Id.* (quoting *Breck,* 745 P.2d at 75).

43. We also note that this order comports with the purpose of the timeliness requirement for a Rule 60(b) motion—to prevent parties from sitting on their rights while claims become stale. Rollins has pursued this case in a timely manner, albeit not strictly in accordance with the Alaska Rules of Civil Procedure.

44. Although we recognize that Rollins might have a colorable claim under Rule 60(b)(3) if the state misrepresented the facts by informing the

superior court that "other licensees have lost their licenses after waiver requests have previously been granted, for failure to operate the minimum time required," we do not suggest that this misrepresentation, standing alone, would necessarily entitle Rollins to relief from judgment. Instead, relief would be appropriate only if the misrepresentation could have affected the outcome of the case—that is, only if the state's records disclosed that Rollins might have been the subject of selective prosecution or some other form of impermissible discrimination. We express no view as to the precise circumstances under which the superior court might be justified in finding a prima facie case of selective prosecution or impermissible discrimination, since the parties have not briefed this issue.

issuance of this opinion. If she prevails, she is entitled to additional discovery and a remand to the Board on the issue of selective enforcement.

MATTHEWS, Chief Justice, not participating.