CARNEY, Justice.
I. INTRODUCTION
After an Anchorage strip club applied to have its liquor license renewed the Alcohol and Beverage Control Board received multiple objections to the renewal. Former employees, the Department of Labor, and the Municipality of Anchorage each alleged wage law violations, untrustworthy management, and unsafe policies. After three hearings before the Board and one before an administrative law judge, the Board denied renewal because it was not in the public interest. The club appealed to the superior court, which affirmed the Board's decision. The club now appeals to us, arguing it was unreasonable to *364 find that renewal was not in the public interest and that the club was denied due process in the administrative proceeding. We affirm the superior court's decision to uphold the Board's determination.
II. FACTS AND PROCEEDINGS
A. Facts
1. The Club's Management
Fantasies on 5th Avenue, LLC is a "strip club business" operating under various names since 1989. For most of the time between 1989 and 2013 Kathy Hartman owned the club. In July 2013 Hartman transferred 100% ownership of the club to her son Travis Gravelle. This transfer occurred approximately one year after a federal judgment was entered against Hartman in a wage and hour lawsuit over the club's claim that its dancers were "independent contractors." Gravelle remains the sole owner of Fantasies.
Gravelle testified that he received no income from his ownership, knew nothing about the business's operation, had no control over its finances or any of its bank accounts until after the start of the administrative proceedings regarding the license renewal, and was only physically present in the club a few times in the past several years. A former employee testified that Gravelle was not allowed to drink at the club or even be on the premises.
Despite Gravelle's ownership, evidence showed that Fantasies has been run by Hartman's boyfriend, Eugene Greaves. Greaves referred to himself as the general manager of Fantasies, but testified that he received no income from the position. As manager, Greaves classified the DJs, janitors, security, and other workers as contractors rather than employees, denying them employee benefits. He also required dancers to sign agreements to be tenants of the club and pay hourly rent to use the facilities for dancing.
Fantasies paid no wages to its dancers; their income came solely from tips. Moreover, they were required to pay rent to Fantasies at the end of each shift from the tips they had received. If dancers did not make enough to pay rent, they were required to pay the remainder from the next shift's tips in addition to paying that next shift's rent.
Objections to the club's license renewal included allegations about unsafe and illegal practices at the club including that Fantasies did not allow workers to make 911 emergency calls from the club. The Board noted two such incidents: no calls were made when a dancer fell on her head from six feet above the floor or when an intoxicated customer passed out and suffered seizures. Another complaint noted that Fantasies' contract with its manager provided a "bonus" when the club made more than $2,000 in one night, apparently violating the licensing statute which states that "[a] person other than a licensee may not have a direct or indirect financial interest in the business for which a license is issued."[1]
2. The Current Liquor License
From March 2014 through the denial of its liquor license in July 2016, Fantasies held liquor license number 1078. Gravelle was Fantasies' sole owner when it obtained the license. Despite Gravelle's ownership, Greaves worked with the Board to obtain the license transfer. The Board staff member who interacted with Greaves testified that she had not even heard Gravelle's voice until the Board's February 2016 meeting. Greaves had obtained a power of attorney from Gravelle and signed all the necessary paperwork on Gravelle's behalf. The Board staff member testified that this "raised red flags" and that she had never seen that done in her five years of processing applications.
In early November 2015 the Department of Labor and Workforce Development's Wage and Hour Administration (DOL) notified Fantasies of its intent to conduct a wage audit of the club for the period between December 2013 and November 2015. The wage investigation was ongoing when Fantasies applied to renew its liquor license.
B. Proceedings
In November 2015 Fantasies applied to renew its liquor license. Board staff noticed *365 an irregularity in the application and contacted Gravelle for clarification. Although Gravelle had signed the form, affirming that he had "examined this application ... and it [was] true, correct, and complete," he responded that a friend had filled out the form on his behalf while he was out of town. Board staff considered his answer to be "a huge red flag" because the applicable statutes and regulations require the license owner to be personally responsible for its use, and because there had been previous cases with other licensees violating AS 04.11.450, prohibiting non-licensees from having a financial interest in the business.
After more thoroughly examining Fantasies' application, Board staff grew "very concerned about prohibited financial interest" and decided it was necessary for the application to go before the Board. The Board scheduled a hearing in February 2016 to consider the license renewal application. Prior to the hearing the Board received objections from DOL, the Municipality of Anchorage, and four former Fantasies workers.
DOL objected based on its investigation, which had revealed that Fantasies' dancers should have been classified as employees and that "thirty or more workers did not receive minimum wage, or any wage, to which they were entitled." The Municipality objected to renewing the license until the wage and hour violations were resolved. And four former workers filed objections alleging that (1) non-licensees had financial interests, (2) wage and hour laws continued to be broken, and (3) renewal was not in the best interest of the public. At the hearing the DOL investigator, the Municipality's attorney, and Fantasies' attorney testified. Because DOL's investigation had not been completed, the Board deferred its decision until its next scheduled meeting in April.
About a week after the February Board hearing, Fantasies' lawyer sent DOL a letter asking it to stop its investigation "or Fantasies [would] take appropriate legal action against [DOL] and [the assigned investigator] personally." As a result, the DOL staff member temporarily halted the investigation until directed to continue despite Fantasies' threatened action.
Before the April meeting DOL asked the Board to "withhold any transfer of the liquor license for [Gravelle] ... pending resolution of unpaid wages." DOL's continuing investigation was still "in the process of auditing records to determine wages due to workers" and "estimate[d] a minimum amount of unpaid wages at $500,000 plus liquidated damages, for failure to pay minimum wage." The Board nevertheless held a continued hearing in April. A former Fantasies dancer testified on behalf of herself and three other former dancers, each of whom had filed written objections with the Board. The Board once again deferred its decision until its next scheduled meeting at the request of the Municipality, which had not yet held a public hearing on the protest.
In May DOL concluded its investigation into Fantasies' wage and hour violations. It found that: workers' services were misclassified as contract labor, no records of hours were kept, dancers were not paid at all and instead forced to pay rent as tenants, managers failed to maintain daily and weekly records of hours worked, and the club either did not maintain or destroyed certain records related to the hiring and firing of workers. DOL acknowledged that it had not yet calculated the amount of money Fantasies owed as a result of the violations.
The Board addressed Fantasies' license renewal for a third and final time at its July meeting. Based on the objections and testimony from all three hearings, the Board determined renewal of Fantasies' license would not be in the public interest.[2] The Board informed Fantasies of its right to a hearing as provided by AS 44.62.330 - 630.
Fantasies filed a Notice of Defense and Request for a Hearing in August.[3] It disputed the Board's findings that renewal was not in the public's best interests, that non-licensees had direct or indirect financial interests *366 in the license, and that it had committed wage and hour violations. The administrative hearing took place over three days in 2016 before an administrative law judge (ALJ). A former dancer, the DOL investigator, Greaves, Hartman, Gravelle, and two Board staff members testified.
Fantasies' lawyer Brian Stibitz cross-examined the former dancer about whether she had been given the choice to work as an employee or an independent contractor. After she repeatedly denied having a choice, he directed her to read a section of the "Entertainer Lease" she had signed that stated she would be liable for liquidated damages and attorney's fees if she asserted in any court action that her relationship with Fantasies was anything other than that of a landlord and tenant. After she read the section he warned her that it applied to the questions he was about to ask. The Board's lawyer objected to its relevance, leading to an extended colloquy between the court and counsel. The ALJ addressed the Board's concern that Stibitz was badgering the witness by noting that it, too, was "worr[ied] about the ... intimidating effect of ... waving [the document] in [the witness's] face." The ALJ ordered Stibitz to move on to a different topic.
Following three days of hearings, the ALJ affirmed the Board's decision denying the renewal. The ALJ issued her decision in November 2016, and the Board adopted it at its February 2017 meeting. The determination was based on:
[DOL]'s finding of ongoing wage-hour violations; public safety concerns related to suppression of 911 calls; Mr. Gravelle's complete lack of knowledge of or involvement in the business; Mr. Greaves's role in "running" the business and the license; an alleged undisclosed financial interest by Mr. Greaves and Ms. Hartman; and alleged undisclosed financial interests through management agreements.
Fantasies appealed to the superior court.[4] The superior court upheld the Board's decision in January 2018, finding it had a rational basis for concluding that renewing Fantasies' license was not in the public interest.
Fantasies appeals, arguing that the superior court erred by affirming the Board's decision because the Board violated its right to due process and acted unreasonably by finding renewal would not be in the public interest. Because there is substantial evidence to support the Board's denial of the renewal application and there was no deprivation of Fantasies' right to due process, we affirm the superior court's decision upholding the Board's determination.
III. STANDARD OF REVIEW
"When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision. The specific form our independent review takes is de novo review: We adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5]
When reviewing administrative decisions we use the "substantial evidence" test for questions of fact and the "reasonable basis" test for questions of law involving agency expertise.[6] Review of the Board's factual findings is limited to whether there was substantial evidence in the record to support those findings.[7] We do not "weigh the quality of the evidence relied upon by the [Board]; at issue for the purposes of our review is simply whether substantial evidence exists."[8] "Substantial evidence is 'such relevant evidence as *367 a reasonable mind might accept as adequate to support a conclusion.' "[9]
The reasonable basis test applies to the Board's exercise of discretion in denying Fantasies' license renewal after determining it was not in the public's best interest under AS 04.11.330(a).[10] When reviewing whether an administrative decision was reasonable we ask "whether there was a prejudicial abuse of discretion," which we will find "if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."[11]
We apply our independent judgment to questions of constitutional law, such as due process.[12]
IV. DISCUSSION
Fantasies claims the Board unreasonably denied its liquor license renewal application as not in the public interest under AS 04.11.330(a)(1). Fantasies also claims it did not receive due process because it had no notice of the basis for denial, no opportunity to be heard, that AS 04.11.510 (the procedure for license renewal applications) violates due process on its face, and that the statutes and regulations applied are unconstitutionally vague.
A. The Board Did Not Abuse Its Discretion By Denying Fantasies' License Renewal Application.
Fantasies argues that the Board abused its discretion by relying on "[a]llegations of [l]abor [v]iolations," "Gravelle's [a]lleged [l]ack of [i]nvolvement [i]n [t]he [b]usiness," an "[e]xpired [m]anagement [a]greement," and "a policy of discouraging 911 calls," to determine that renewing Fantasies' license was not in the public interest. When reviewing administrative fact findings in quasi-judicial proceedings, we have "consistently adhered to the substantial evidence on the whole record test under AS 44.62.570(c)(2)."[13] The Board did not abuse its discretion because there is substantial evidence supporting each of its findings.
Fantasies also argues that regardless of whether there was substantial supporting evidence, these findings are not listed among the factors the Board may consider when making a public interest finding under 3 Alaska Administrative Code (AAC) 304.180, and that the Board therefore erred by considering them. But the regulation authorizes the Board to make its decision based on any of the enumerated factors as well as any other factor deemed relevant to the public interest; it does not limit the Board to the listed factors.[14] The Board did not abuse its discretion by denying Fantasies' license renewal as not in the public interest.
1. Substantial evidence supports the Board's findings.
The Board decided that renewing Fantasies' license was not in the public interest based on the following findings: (1) DOL determined that Fantasies misclassified dancers and other employees to evade wage and hour laws; (2) managers discouraged dancers from calling 911 during apparent medical emergencies; (3) Gravelle, the LLC's owner, had little, if any, meaningful knowledge about how the club was being operated; (4) Gravelle had no understanding of the statutory requirements for liquor license operation [15] *368 or how the license was being operated, and no apparent interest in how it was being operated; and (5) the club's management agreement gave the manager an illegal direct financial interest in the license. There is substantial evidence supporting each of these findings.
a. DOL determined wage and hour violations .
The record contains testimony and numerous letters demonstrating Fantasies' failure to comply with wage and hour laws. The documented violations included treating dancers as tenants required to pay rent to the club instead of receiving wages, not keeping adequate records of employee pay, having an operating agreement that seemed to have been "done after the fact" and back-dated, hindering DOL's investigation, forcing dancers to "work to pay off a debt for not showing up at work," and having employees work for free for the for-profit business. The DOL investigator testified that it is a "sign[ ] of labor trafficking, when somebody has to work to pay off a debt and not earn any money." In May 2016 DOL found Fantasies in violation of wage and hour laws; its finding provides substantial evidence in support of the Board's finding.
b. Fantasies discouraged dancers from calling 911 during medical emergencies .
A former dancer testified that Fantasies' dancers were not allowed to call 911 for apparent medical emergencies at the club. Greaves testified that the dancer's claim was an "asinine statement," but offered no evidence to refute it. While acknowledging that the evidence was somewhat limited, the ALJ cited the dancer's credible description of "two instances of being intimidated out of calling 911 when such a call would have been appropriate" and noted that Fantasies had not produced any witness with knowledge of the club's day-to-day operations to dispute her testimony. The Board's finding is supported by substantial evidence.
c. The owner lacked knowledge of club operations .
Gravelle is Fantasies' sole owner but plays no role in running the club. He testified that he had never run an LLC before, did not manage the business, did not know how much money Fantasies made, had no access to the business bank accounts prior to the denial of the license renewal, and did not know if Fantasies had any kind of management agreements with anyone. A former dancer testified that Gravelle had not even been allowed into the club during open hours more than a couple times over the past few years. There is substantial evidence to support the finding that Gravelle lacks knowledge of club operations legally required of a sole owner of an LLC operating a liquor license.
d. The owner lacked knowledge of legal requirements .
As a liquor license owner, Gravelle is required to understand the laws controlling its use.[16] But Gravelle was not aware of the club's day-to-day operations and consequently had no means of knowing whether the club was in compliance with these laws. Gravelle testified to knowing nothing about the business's finances or tax returns, even though Fantasies' income and losses were attributed to Gravelle for tax purposes. Much of Fantasies' paperwork was not even signed by Gravelle, but by Greaves through the power of attorney that Gravelle had given him. Only Greaves had been involved in applying for Board renewal, further illustrating Gravelle's divorce from operating the license he owned. The Board staff member testified she had never met nor even heard Gravelle's voice until the first Board meeting in February 2016. There was no evidence that he had attempted to learn the laws or anything about the operation of the license. The finding that Gravelle had no understanding of *369 the requirements for operating a liquor license is supported by substantial evidence.
e. A non-owner had a direct financial interest in the license.
The ALJ heard evidence that Fantasies had a number of managers over the preceding ten years. Some, but not all, of them had written management agreements with Fantasies. The Board found that the lack of paperwork relating to these managers left the Board unable to determine who was responsible for potential violations in operating Fantasies' license.
One of the two management agreements presented to the Board contained an incentive clause reading:
As an added Incentive for the Manager, where the daily gross revenue exceeds two thousand dollars, the Manager shall receive seventy per cent of that amount above two thousand dollars, and the Owner shall receive thirty per cent of that amount over two thousand dollars. This shall apply for each and every day over said amount.
Alaska Statute 04.11.450(a) mandates that "[a] person other than a licensee may not have a direct or indirect financial interest in the business for which a license is issued." Fantasies' agreement to pay its manager 70% of revenue exceeding $2,000 clearly gave the manager a "direct ... financial interest in the business for which [the] license is issued." This management agreement alone provides substantial evidence of a non-licensee having a direct financial interest in the license.
2. The evidence supports finding renewal is not in the public interest.
"An application requesting renewal of a license shall be denied if ... the [B]oard finds, after review of all relevant information, that renewal of the license would not be in the best interests of the public."[17] We have held that other sections of the alcohol licensing statutes "authorize[ ] broad discretion in denial [of liquor licenses] for any reason found incompatible with the public interest."[18] And the regulation implementing those statutes authorizes the Board, when deciding whether to renew a liquor license, to exercise its discretion to consider the applicant's past criminal acts involving "moral turpitude," violations of statutes or regulations governing alcoholic beverages, violations of another state's laws governing alcoholic beverages, and felonies committed in the preceding ten years.[19] The regulation also allows the Board to consider whether the applicant is "untrustworthy, unfit to conduct a licensed business, or a potential source of harm to the public;" whether the applicant has permitted "sexual contact" on the licensed premises; and "all other factors the [B]oard in its discretion determines relevant to the public interest."[20] Fantasies argues that because this regulation does not explicitly list the exact findings the Board made, its findings are not valid bases to deny renewal.
But Fantasies misunderstands the regulation. The factors the Board may consider "include " those listed in the statute, but the list is not exhaustive.[21] And 3 AAC 304.180(a)(4) explicitly gives the Board even greater discretion by allowing it to consider "all other factors the [B]oard in its discretion determines relevant to the public interest." The findings on which the Board based its denial of Fantasies' renewal thus relate to factors it was authorized to consider in determining whether the renewal is in the public's best interest.
B. Fantasies Received Due Process.
Fantasies asserts four violations of due process. It challenges the process provided in the statutory renewal procedure, arguing that the club received no notice of the basis or opportunity to be heard, and that *370 the specific license renewal process set out in AS 04.11.510 does not comply with due process.[22] In addition Fantasies argues that AS 04.11.330(a)(1) and 3 AAC 304.180 - allowing denial of an application when a license would not be in the public's best interests - are unconstitutionally vague. The due process clauses of both the United States and Alaska Constitutions require "that adequate notice and a meaningful opportunity to be heard ... be afforded to liquor licensees before their licenses can be suspended."[23] This due process requirement similarly applies when a license's renewal is denied. Fantasies received adequate notice and an opportunity to be heard in the three Board hearings, as well as through written notices of hearings, decisions, and opportunities to appeal, and in the subsequent hearing before the ALJ.
1. Fantasies received an opportunity to be heard.
Due process "merely require[s] the Board to hold a hearing before it [can] suspend a liquor license. ... [T]he hearing need not be elaborate, and the Board need not make written findings or even file a written opinion explaining its action so long as it reached its decision after hearing the appellant's presentation."[24] Fantasies was entitled to "an opportunity to be heard in a meaningful, impartial administrative hearing in full compliance with the Administrative Procedures Act."[25] Fantasies received three such opportunities before the Board and an additional opportunity before an ALJ.
Fantasies' attorney attended all three Board hearings and the ALJ hearing on the club's behalf, vigorously questioned witnesses, testified himself, and answered Board questions during two of the meetings. Fantasies claims it is entitled to more process despite the licensing statute's lack of requirement of any hearing: the Board "may review an application for the ... renewal ... of a license without affording the applicant notice or hearing ."[26] The fact that Fantasies participated in multiple hearings more than satisfies due process.
2. Fantasies received notice of the basis for denial of the license renewal.
Fantasies argues that it had no notice of the reasons why its license renewal was denied either at the Board meetings or at the administrative hearing. Fantasies also argues that it was denied notice before the administrative hearing that the 2014 management agreement was a basis for non-renewal. Alaska Statute 04.11.510(b) allows the Board to review a renewal application "without affording the applicant notice or hearing." We have nonetheless held that due process requires both notice and a hearing before the Board can take an individual's property interest in a liquor license.[27] But "[t]hese procedures 'need not be elaborate,' ... and due process 'merely require[s] the [ABC] Board to hold a hearing before it [can] suspend a *371 liquor license."[28] Fantasies received three separate hearings before the Board during which it was presented with the objections to its renewal and had an opportunity to refute them. The same written objections to the renewal were before the Board at each hearing. Fantasies received adequate notice through the Board hearings and written objections.
Fantasies claims that it was not until the administrative hearing that the Board raised the issue of the management agreement violating the license. The Board's written notice of denial following its vote to deny renewal must state "the reason for the denial in clear and concise language."[29] The Board's notification letter to Fantasies stated that, "per AS 04.11.330(a)(1) ... the renewal of the license would not be in the best interest of the public." The letter also refers to the three Board hearings, during which former workers and DOL objected due to non-licensees having financial interests in the license.
Before a hearing with an ALJ, the Administrative Procedure Act requires that the hearing file include a statement of issues specifying the statute with which compliance must be shown and the "particular matters that have come to the attention of the initiating party and that would authorize a denial of the agency action sought."[30] But there is no similar requirement for the Board, only for the party initiating the ALJ hearing, and the Act does not include such requirements for an agency's notice of denial. We have considered cases where the Board provided more detailed findings of fact explaining why it denied a license, specifying the precise reasons it found granting a license would not be in the public interest.[31] But we have upheld the final decision in other contexts so long as "the subject matter remains the same[,] the public has been reasonably notified," and it is "a logical outgrowth of that notice."[32]
Consideration of the management agreement is a logical outgrowth of DOL's initial concerns listed in its January 2016 letter to the Board. The agreement violated AS 04.11.450, prohibiting non-licensees from having direct or indirect financial interests in the licensed business. DOL's initial objection letter asserted that it "ha[d] ascertained credible information that ... a person(s) other than the licensee has direct and indirect financial interest in the business." The management agreement is evidence that directly supports DOL's objection.
Furthermore, Fantasies itself listed the issue of a prohibited financial interest in its request for the administrative hearing. Having itself noted that this issue was a basis for its appeal to the ALJ, Fantasies cannot now prevail on a claim that it had no notice that evidence relating to the issue of a prohibited financial interest would be raised at the administrative hearing.
3. The licensing laws are not unconstitutionally vague.
Both AS 04.11.330(a)(1) and 3 AAC 304.180(a)(4) authorize the Board to deny a license application if it finds that renewal is not in the public's best interests.[33]
*372 Fantasies argues that both the statute and the regulation are unconstitutionally vague. "[A] law may be unconstitutionally vague if the scope of exceptions and the scope of defenses are unclear."[34] We consider two elements in evaluating whether a law is void for vagueness: "First ... whether there is a history or a strong likelihood of arbitrary enforcement and uneven application. Second ... whether the regulation provides adequate notice of prohibited conduct."[35] Because there is no history of arbitrary enforcement and Fantasies was given notice, these laws are not vague as applied to Fantasies' denial.[36]
a. The Board did not arbitrarily enforce the statute or regulation against Fantasies.
Fantasies claims that the Board arbitrarily enforced AS 04.11.330(a)(1) and 3 AAC 304.180. But this claim is made without analysis or explanation. Consequently, any claims of arbitrary enforcement by the Board are waived.[37] The only articulated claim of arbitrary enforcement is against DOL, claiming that DOL arbitrarily filed an objection to Fantasies' license with the Board when it had settled with two restaurants for unpaid wages in an unrelated matter. The question of arbitrary enforcement by DOL is not properly before us because this is not a review of DOL's actions; DOL investigates claims of wage violations and routinely shares information with other agencies when relevant.
b. The licensing laws provide adequate notice of conduct that is not in the public's best interests.
A law which "either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."[38] As used in the statute and regulation, the term "best interests of the public" is not vague. The statute lists a number of factors that can lead to a determination that renewal would not be in the public interest, including criminal acts, violations of regulations or other laws, untrustworthiness, unfitness to conduct a licensed business, being a potential source of public harm, and allowing sexual contact on the licensed premises.[39] The regulation names these factors and allows the Board to consider "all other factors the [B]oard in its discretion determines relevant to the public interest."[40] While this scope is broad, it is not unconstitutionally vague: the regulation lists the very factors on which the Board decided to deny Fantasies' renewal application. Factors such as prohibiting 911 calls during medical emergencies can easily be understood by those with "common intelligence" as not in the public interest.[41]
Each of the Board's findings correlates to the licensing laws. The Board's finding that Fantasies violated wage and hour laws was based upon DOL's investigation which determined that Fantasies violated AS 04.21.030 's requirement that a business be lawfully conducted. This in turn satisfies 3 AAC 304.180(a)(1)(B), listing "a violation of AS 04" as one factor to be considered in determining whether license renewal is in the public's best interest.
The Board's finding that Fantasies discouraged dancers from calling 911 during *373 medical emergencies is not only generally against the public interest, it is also "a potential source of harm to the public," a factor listed under 3 AAC 304.180(a)(2). Additionally, the finding that Gravelle lacks knowledge of club operations suggests he is "unfit to conduct a licensed business," another factor enumerated under 3 AAC 304.180(a)(2). The finding that Gravelle does not know the legal requirements for operating Fantasies' license similarly indicates that he is "unfit to conduct a licensed business" as well as "untrustworthy" because he had signed a document claiming familiarity with Title 4 of the Alaska Statutes and its regulations. Both of these factors are listed in 3 AAC 304.180(a)(2). And the finding that a management agreement gives a manager a direct financial interest in the license also demonstrated that Fantasies violated AS 04.11.450(a).[42] Failure to lawfully conduct business is a factor listed in 3 AAC 304.180(a)(1)(B).
In addition to the specific listed factors on which the Board based its decision, it had discretion to consider "all other factors ... relevant to the public interest" under 3 AAC 304.180(a)(4). Even if the factors on which the Board based its decision were not specifically listed for its consideration, it is apparent that people "of common intelligence" would consider most, if not all, of these factors relevant to the public interest.[43]
The Board's denial of Fantasies' license renewal as not in the public interest is not unconstitutionally vague. The Board's findings are included in the list of factors the Board may consider. A regulation need not explicitly list every permutation of proscribed behavior "[s]o long as the mandate affords a reasonable warning ... in light of common understanding and practice[s]."[44]
V. CONCLUSION
We AFFIRM the superior court's decision upholding the Board's determination denying the renewal of Fantasies' liquor license number 1078 and find no due process violation.

AS 04.11.450(a).

See AS 04.11.330(a)(1) (requiring denial of renewal application if [B]oard finds not in best interests of public).

See AS 44.62.390(a) (detailing time limit and substance of what respondent may file in notice of defense, including request for hearing).

See AS 44.62.560(a) ("[j]udicial review by the superior court of a final administrative order may be had by filing a notice of appeal"); Alaska R. App. P. 602(a)(2) (same).

Heller v. State, Dep't of Revenue , 314 P.3d 69, 72-73 (Alaska 2013) (footnotes omitted).

Rollins v. State, Dep't of Pub. Safety , 312 P.3d 1091, 1094 (Alaska 2013).

Halter v. State, Dep't of Commerce & Econ. Dev., Med. Bd. , 990 P.2d 1035, 1037 (Alaska 1999).

S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment , 172 P.3d 774, 780 (Alaska 2007).

Id. (quoting Leigh v. Seekins Ford , 136 P.3d 214, 216 (Alaska 2006) ).

See Rollins v. State, Dep't of Pub. Safety , 312 P.3d at 1094 ("[T]he 'reasonable basis' test applies to questions of law involving agency expertise.").

See AS 44.62.570(b)(3) (specifying review by superior court, but we independently review merits of underlying decision).

Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd. , 991 P.2d 202, 206 (Alaska 1999).

State, Alcoholic Beverage Control Bd. v. Decker , 700 P.2d 483, 486 (Alaska 1985), overruled on other grounds by Rollins , 312 P.3d at 1095. AS 44.62.570(c)(2) states that abuse of discretion is established if the court determines that the findings are not supported by "substantial evidence in light of the whole record."

3 AAC 304.180(a)(4).

See, e.g. AS 04.11.010 -.700 (licensing), 04.21.010-.080 (general provisions).

AS 04.21.030 ("The licensee has a duty to exercise that degree of care that a reasonable person would observe to ensure that a business under the person's control is lawfully conducted.").

AS 04.11.330(a)(1).

Decker , 700 P.2d at 487 (second alteration in original), overruled on other grounds by Rollins , 312 P.3d at 1095.

3 AAC 304.180(a)(1).

3 AAC 304.180(a).

3 AAC 304.180(a) ("The factors the board will, in its discretion, consider in determining whether it is in the public interest to ... refuse to renew or transfer a license include ....).

While AS 04.11.510 lays out the general procedure for actions on license applications, suspensions, and revocations, Fantasies received more opportunity to be heard than the statute requires, having been provided three Board hearings, an administrative appeal, and a superior court appeal. Because we find that Fantasies received due process and thus was not injured by the purportedly deficient statute, we decline to address this purely legal issue. See State v. Am. Civil Liberties Union of Alaska , 204 P.3d 364, 368-69 (Alaska 2009) ("[W]hile Alaska's standing rules are liberal this court should not issue advisory opinions or resolve abstract questions of law." (alteration in original) (quoting Bowers Office Prods., Inc. v. Univ. of Alaska , 755 P.2d 1095, 1097-98 (Alaska 1988) )).

Frontier Saloon, Inc. v. Alcoholic Beverage Control Bd. , 524 P.2d 657, 661 (Alaska 1974) ; see also Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd. , 991 P.2d 202, 211 (Alaska 1999).

Rollins v. State, Dep't of Revenue , 991 P.2d at 211 (citing Frontier Saloon , 524 P.2d at 659 ).

Id.

AS 04.11.510(b) (emphases added).

Stevens v. State, Alcoholic Beverage Control Bd. , 257 P.3d 1154, 1160 (Alaska 2011) (requiring merely that Board hold hearing before suspending license); see also Frontier Saloon, Inc. , 524 P.2d at 661 (holding that state and federal due process clauses require hearing before license can be suspended by Board).

Stevens , 257 P.3d at 1160 (third, fourth, and fifth alterations in original) (quoting Rollins v. State, Dep't of Revenue , 991 P.2d at 211 ).

AS 04.11.510(b)(1). Written notice was provided to Fantasies on July 21, 2016, the day after its application was denied at the Board meeting.

AS 44.62.370(a).

See State, Alcoholic Beverage Control Bd. v. Decker , 700 P.2d 483, 487 (Alaska 1985) (affirming Board's denial of liquor license as not in public interest because it would contribute to teenage drinking at nearby schools and was not necessary to serve area's reasonable alcohol requirements), overruled on other grounds by Rollins v. State, Dep't of Pub. Safety , 312 P.3d 1091, 1095 (Alaska 2013).

Trs. for Alaska v. State, Dep't of Nat. Res. , 795 P.2d 805, 808-09 (Alaska 1990) (finding adequate notice because potential for offshore facilities to support oil development was "logical outgrowth" of notice saying sale could occur without onshore support from specific site).

"An application requesting renewal of a license shall be denied if ... the [B]oard finds ... that renewal of the license would not be in the best interests of the public." AS 04.11.330(a)(1). "The factors the [B]oard will, in its discretion, consider in determining whether it is in the public interest to ... refuse to renew ... a license include ... all other factors the [B]oard in its discretion determines relevant to the public interest." 3 AAC 304.180(a)(4).

Halliburton Energy Servs. v. State, Dep't of Labor , 2 P.3d 41, 50 (Alaska 2000).

Id.

See id. ("When evaluating whether [a regulation] is void for vagueness, we must determine whether the regulation is vague as applied to the particular conduct for which a citation was issued.").

See Windel v. Carnahan , 379 P.3d 971, 980 (Alaska 2016) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.") (quoting Burts v. Burts , 266 P.3d 337, 344 (Alaska 2011) ).

Halliburton , 2 P.3d at 51 (quoting Lazy Mountain Land Club v. Matanuska-Susitna Borough Bd. of Adjustment & Appeals , 904 P.2d 373, 382 (Alaska 1995) ).

3 AAC 304.180(a)(1)-(3).

3 AAC 304.180(a)(4).

Halliburton , 2 P.3d at 51.

AS 04.11.450(a) ("A person other than a licensee may not have a direct or indirect financial interest in the business for which a license is issued.").

See Halliburton , 2 P.3d at 51.

Id. (first alteration in original) (quoting Vanco Constr., Inc. v. Donovan , 723 F.2d 410, 412 (5th Cir. 1984) ).