*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SETH LOOKHART, | ) | |
| | ) | Supreme Court No. S-18466 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-09037 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DIVISION OF | ) | |
| CORPORATIONS, BUSINESS, & | ) | No. 7702 – May 24, 2024 |
| PROFESSIONAL LICENSING, | ) | |
| BOARD OF DENTAL EXAMINERS, | ) | |
| | ) | |
| Appellee. | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Chester D. Gilmore, Cashion Gilmore & Lindemuth, Anchorage, for Appellant. Robert Kutchin, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

PATE, Justice.

## I. INTRODUCTION

The Board of Dental Examiners revoked Seth Lookhart's dental license after he was convicted of dozens of crimes perpetrated in furtherance of a fraudulent scheme of staggering proportions that jeopardized the health and safety of his patients. Lookhart appealed the Board's revocation of his license, arguing that his punishment

was inconsistent with past Board decisions. On appeal, the superior court concluded that the Board properly exercised its discretion by revoking Lookhart's dental license.

We conclude that the Board did not abuse its discretion by revoking Lookhart's license. None of the Board's prior licensing cases involved misconduct of the scope and severity in this case, so there was no applicable precedent to limit the Board's exercise of its discretion. We affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Lookhart's Dental Career And Misconduct

The facts in this appeal are undisputed. Lookhart was issued an Alaska dental license in June 2014 and a parenteral sedation[1] permit in May 2015. Between May 2016 and March 2017, Lookhart systematically and unnecessarily sedated his patients in a manner that allowed him to fraudulently bill the maximum amount covered by Alaska's Medicaid program,[2] overcharging Medicaid by more than $1.6 million. Lookhart routinely billed Medicaid for sedation that was not performed, billed Medicaid at higher rates than other insurers, and created false dates of service to maximize his wrongful reimbursements. During this same period Lookhart also stole an additional $412,500 from a business partner.

In order to maximize his billings to Medicaid, Lookhart engaged in a series of standard-of-care violations: He sedated patients beyond the scope of his

---

[1] Parenteral sedation refers here to sedative medications administered intravenously, as opposed to in liquid or pill form.

[2] Alaska Medicaid will pay for dentist-administered general anesthesia or sedation if the dentist provides a written medical justification explaining why local anesthesia would be "inadequate to control pain." 7 Alaska Administrative Code (AAC) 110.155(a)-(b). The program also requires the dentist to obtain prior authorization and submit documentation showing the patient requires the service because of a severe disability or "medically compromised condition," or because of a "prolonged or difficult surgical procedure." *Id.* 110.155(b)

training and permit,[3] sedated multiple patients simultaneously, billed Medicaid for sedation during routine cleanings, and sedated patients with underlying chronic diseases that made sedation dangerous. He allowed his unlicensed office manager to sedate patients, pressured patients into unwanted sedation, and left sedated patients to drive themselves home.

On two occasions, Lookhart's patients nearly lost their lives as a direct consequence of his reckless sedation practices: One displayed vital signs "inconsistent with signs of life," while another's heart rate dropped to 19 beats per minute with what Lookhart described as a "crazy high" blood pressure. Lookhart also extracted one deeply sedated patient's tooth while riding a hoverboard, and then sent a video of the unsafe extraction to his friends and family members without the patient's consent.[4]

Lookhart was fully aware that his conduct was reckless and illegal, but declared that the Dental Board "would literally have to be there watching me do it" to catch him.

---

[3] Lookhart's permit only authorized him to perform light-to-moderate sedation, but 80% of the time he practiced deep sedation, which carries greater risks.

[4] This video went viral, generating national and international headlines. *See, e.g.*, Maria Alejandra Pachon Urrego, *12 Años de Cárcel a Odontólogo que Hizo 'Acrobacia' al Sacar Diente*, EL TIEMPO (Bogotá) (Sept. 17, 2020, 1:40 PM), https://www.eltiempo.com/mundo/eeuu-y-canada/odontologo-hizo-una-acrobacia-al-sacar-un-diente-en-estados-unidos-538358; *Dentist Jailed After Extracting Tooth While on Hoverboard*, DAILY NATION (Nairobi) (Sept. 19, 2020), https://nation.africa/kenya/news/world/dentist-jailed-after-extracting-tooth-while-on-hoverboard-2303146; *Alaska'da Elektrikli Kaykay Üzerinde diş Çeken diş Hekimine 12 Yıl Hapis Cezası*, CUMHURIYET (Istanbul) (Sept. 19, 2020), https://www.cumhuriyet.com.tr/haber/alaskada-elektrikli-kaykay-uzerinde-dis-ceken-dis-hekimine-12-yil-hapis-cezasi-1767241. We take judicial notice of these articles under Rule 201 of the Alaska Rules of Evidence only to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (applying analogous federal rule).

Lookhart was arrested in April 2017. After a six-week bench trial ending in January 2020, he was convicted on 46 charges, including 11 felony counts of medical assistance fraud, three felony counts of scheming to defraud, one count of felony theft, three class A misdemeanor counts of reckless endangerment, one class B misdemeanor count of failure to meet minimal standards of dentistry, and 27 additional misdemeanors. The trial court also issued an order finding that the State had proven 13 sentencing aggravators beyond a reasonable doubt. The trial court found that the evidence against Lookhart was "overwhelming." He was ultimately sentenced to 20 years in prison with eight years suspended.[5]

### B. Dental Board Proceedings

Following Lookhart's convictions, the Division of Corporations, Business and Professional Licensing filed a 17-count accusation seeking to revoke Lookhart's dental license.[6] Lookhart stipulated to the facts contained in the accusation, leaving it to an administrative law judge (ALJ) to determine whether revoking his license was an appropriate sanction consistent with AS 08.01.075(f).[7]

The ALJ issued a proposed decision in September 2020. Although the ALJ devoted a significant portion of the proposed decision to discussing prior cases of the Dental Board, other Alaska licensing boards, and the dental regulators of other states, she also rejected the idea that any prior Alaska decision could control the outcome of this case. The ALJ found that "there are simply no prior cases of this or

---

[5] *State v. Lookhart*, No. 3AN-17-02990 CR (Alaska Super., Sept. 14, 2020). Lookhart's appeal in his criminal case is pending in the court of appeals. *Lookhart v. State*, No. A-13752 (Alaska App. filed Oct. 26, 2020).

[6] *See* AS 44.62.360.

[7] AS 08.01.075(f) obligates licensing boards to "seek consistency in the application of disciplinary sanctions" and "explain a significant departure from prior decisions involving similar facts in the order imposing the sanction."

any other Alaska board involving facts that are truly comparable to those presented here."

The ALJ concluded that Lookhart's "astonishing range of misconduct" was "more wide-ranging and severe" than in any prior case in which the Board imposed a lesser sanction. Revocation, the ALJ wrote, "would be justified if the only misconduct here was the Medicaid fraud"; "might have been justified if the only misconduct here was the theft"; and "would also have been justified if the only misconduct here was the numerous standard of care violations." Taken as a whole, the ALJ concluded that revocation was the "clear and obvious sanction," adopting the Division's contention that, "[i]f this case does not require it, no future case will."

The Board adopted the ALJ's decision without modification.

## C. The Superior Court's Decision

Lookhart appealed to the superior court, arguing that the Board's decision was inconsistent with its prior decisions revoking dental licenses. The court concluded that AS 08.01.075(f) affords the Board "wide discretion" to determine appropriate sanctions, rejecting Lookhart's argument that it was narrowly constrained by the two prior Board cases that resulted in revocation. The court reasoned that even if it accepted Lookhart's argument that the Board's decision departed from precedent, the Board provided an adequate explanation justifying its decision in this case, which is all that AS 08.01.075(f) requires.

The court noted that "no Alaska case is factually comparable to the sheer scale of malfeasance here," that the Board "painstakingly detailed" Lookhart's misconduct, and that it had "carefully considered and rejected any comparison with prior Board cases." Although the court stated that Lookhart did not challenge the adequacy or logic of the Board's decision, it concluded that the Board's decision to revoke his dental license was a proper exercise of its discretion. The superior court thus affirmed the Board's decision in full.

Lookhart appeals.

## III. STANDARDS OF REVIEW

"When a superior court acts as an intermediate court of appeals reviewing an administrative or agency decision, we independently review the merits of the administrative decision, giving no deference to the superior court's decision."[8] We review an "agency's factual findings to determine whether they are supported by substantial evidence."[9] The substantial evidence test is highly deferential and considers evidence substantial if it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] This level of deference "reflects the prudence of deferring to a state professional board's special competence in recognizing violations of professional standards."[11]

We review questions of law implicating agency expertise, such as an agency's selection of a particular sanction, using the reasonable basis test.[12] Under this

---

[8]    *Odom v. State, Div. of Corps., Bus. & Prof. Licensing*, 421 P.3d 1, 6 (Alaska 2018) (first citing *Jurgens v. City of North Pole*, 153 P.3d 321, 325 (Alaska 2007); and then citing *State, Dep't of Revenue v. Merriouns*, 894 P.2d 623, 625 (Alaska 1995)).

[9]    *Id.* (citing *Jurgens*, 153 P.3d at 325).

[10]    *Id.* (quoting *Storrs v. State Med. Bd.*, 664 P.2d 547, 554 (Alaska 1983)).

[11]    *Id.* (quoting *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Corps., Bus. & Prof'l Licensing v. Wold*, 278 P.3d 266, 273 (Alaska 2012)).

[12]    *Fantasies on 5th Avenue, LLC v. Alcoholic Beverage Control Bd.*, 446 P.3d 360, 367 (Alaska 2019). In their briefing the parties relied on our statement in *Odom v. State, Division of Corps., Business & Professional Licensing*, 421 P.3d at 6, that "we review the agency's selection of a particular disciplinary sanction for abuse of discretion." This statement in *Odom* must be understood as representing the inquiry we make within the context of the reasonable basis test. We take this opportunity to clarify that the appropriate standard for reviewing agency decisions that implicate agency expertise is the reasonable basis standard. *See, e.g.*, *Wendte v. State, Bd. of Real Est. Appraisers*, 70 P.3d 1089, 1091 (Alaska 2003); *State, Div. of Corps., Bus. & Prof. Licensing, Alaska Bd. of Nursing v. Platt*, 169 P.3d 595, 598 (Alaska 2007).

standard, "we ask 'whether there was a prejudicial abuse of discretion,' which we will find 'if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' "[13]

We apply our "independent judgment" when interpreting the meaning of a statute that "does not 'implicate an agency's special expertise or determination of fundamental policies.' "[14]

## IV. DISCUSSION

Lookhart argues that AS 08.01.075(f) narrowly circumscribes the Board's authority to revoke licenses and that the revocation of his license was inconsistent with the Board's prior decisions. Both arguments lack merit. While AS 08.01.075(f) obligates the Board to "seek consistency" with its prior decisions, there is simply no prior case comparable to the scope of Lookhart's egregious dishonesty and misconduct. The Board did not abuse its discretion in concluding that revoking Lookhart's license was an appropriate sanction.

### A. Alaska Statute 08.01.075(f) Affords The Dental Board The Flexibility To Craft Appropriate Sanctions In Response To Novel Circumstances.

Alaska Statute 08.01.075(f) provides that the Board of Dental Examiners "shall seek consistency in the application of disciplinary sanctions." Throughout his briefing, Lookhart insists that "Board decisions must be consistent with prior precedent" and argues the statutory framework and the Board's prior decisions allow the Board to revoke a license only when two conditions are met: (1) the dentist shows "contempt for the Board's ability to discipline" by refusing to accept responsibility or

---

[13] *Fantasies on 5th Avenue*, 446 P.3d at 367 (quoting AS 44.62.570(b)(3)).

[14] *Rosauer v. Manos*, 440 P.3d 145, 147-48 (Alaska 2019) (quoting *Mun. of Anchorage v. Suzuki*, 41 P.3d 147, 150 (Alaska 2002)).

adhere to conditions of prohibitions, and (2) the dentist either fraudulently prescribes medicine while exhibiting addictive behaviors or causes "extreme patient harm."[15] Lookhart argues that he did not do either of these things, making revocation an inconsistent sanction in his case.

If we were to adopt Lookhart's understanding of the Board's statutory mandate, it would artificially limit the ability of the Board to craft appropriate sanctions in response to new factual situations. The Board is obligated to "seek consistency" between cases involving similar facts. But it is not obligated to operate strictly within the bounds of existing precedent when a case presents novel circumstances. Lookhart's interpretation of AS 08.01.075 cannot be squared with the language of the statute or the surrounding provisions.

Alaska Statute 08.01.075(f) provides that the Board "shall seek consistency" in applying disciplinary sanctions. The U.S. Court of Appeals for the First Circuit has interpreted the use of "shall seek" rather than "shall" as reflecting clear legislative intent "to require only that the [agency] take reasonable, affirmative steps" toward the statute's goal.[16] We agree with the First Circuit's reasoning and decline to read the words "shall seek" to impose the strict mandate that Lookhart proposes.

---

[15] *See In re Greenough*, OAH Nos. 1200-94-006 & 1200-96-5 (Dec. 22, 1998), https://aws.state.ak.us/OAH/Decision/Display?rec=6585 (concluding dentist's misconduct while on probation provided "a basis for revocation"); *In re Robinson*, OAH No. 1200-95-013, at 8-9 (Sept. 13, 1996), https://aws.state.ak.us/ OAH/Decision/Display?rec=6583 (revoking license where dentist fraudulently prescribed medication "for the purpose of maintaining [a person's] addiction to drugs"); *Smith v. State, Bd. of Dental Exam'rs*, No. 7806, 1984 WL 908389, at *1, *3 (Alaska May 2, 1984) (affirming Board's decision to revoke license after "willful and gross malpractice or negligence").

[16] *Conille v. Sec'y of Hous. & Urb. Dev.*, 840 F.2d 105, 112-13 & n.12 (1st Cir. 1988) (noting that, absent clearly expressed contrary legislative intent, "shall seek" does not mean "shall").

Moreover, AS 08.01.075(f) explicitly recognizes that the Board may depart from its prior decisions, provided that the Board "explain[s] a significant departure from prior decisions involving similar facts." While consistency is a goal that the Board is obligated to seek, the statute affords the Board significant discretion in fashioning an appropriate sanction.

The statutory scheme of dental licensing also weighs against Lookhart's reading. Alaska Statute 08.36.315 sets forth a list of fourteen conditions, any of which may justify the Board's decision to "revoke or suspend the license of a dentist." But Lookhart argues that only instances of demonstrated "contempt for the Board's ability to discipline" and either fraudulent prescriptions or "extreme patient harm" may justify the decision to revoke a dental license. This reading would render several sections of AS 08.36.315 effectively superfluous. As relevant to this case, subsections .315(1) and (2), which provide for license revocation in cases of fraud, and subsection .315(6), providing the same for standard-of-care violations, would be rendered meaningless.

Lookhart's reliance on *Odom v. State, Division of Corps., Business & Professional Licensing*[17] is misplaced. In *Odom*, the Medical Board revoked a doctor's license after a single case of inappropriate prescribing.[18] The Medical Board in *Odom* provided no explanation of why its decision to revoke was consistent with its prior cases.[19] We concluded that the Medical Board, by adopting a decision that "contain[ed] no findings of its own" and providing no written explanation for its decision to revoke Odom's license, failed to comply with its statutory duty to either "be consistent in the application of disciplinary sanctions" or explain an inconsistency.[20]

---

[17]     421 P.3d 1.

[18]     *Id.* at 3-6.

[19]     *Id.* at 8.

[20]     *Id.* at 9 (citing AS 08.64.331(f)).

Unlike in *Odom*, the Dental Board here adopted a detailed order setting forth its rationale for revocation. Unlike the Medical Board in *Odom*, which failed to reference prior decisions involving similar facts, the Dental Board considered a range of past decisions and concluded that none were comparable to the facts and circumstances of Lookhart's case. It examined each of the decisions put forward by Lookhart and provided a detailed explanation of why its decision to revoke was consistent with its prior decisions. The errors present in *Odom* simply do not appear in the Board's decision in this case.

The Board is obligated to "seek consistency" in its disciplinary decisions.[21] But this obligation does not trap the Board in amber, rendering it unable to respond appropriately to the unique facts and circumstances presented in each case. Lookhart's interpretation of this requirement would effectively strip the Board of a significant range of its statutory powers, while also hindering its ability to adapt to evolving professional standards. The Board must be afforded the flexibility to craft appropriate sanctions in response to novel factual circumstances, such as those presented in this case. Alaska Statute 08.01.075(f) affords the Board this flexibility.

## B. No Prior Dental Board Decision Involves Similar Facts.

The Board is obligated to "seek consistency in the application of disciplinary sanctions" and "explain a significant departure from prior decisions involving similar facts."[22]

The Board found that "there are simply no prior cases of this or any other Alaska board involving facts that are truly comparable to those presented here," because Lookhart's conduct was "more wide-ranging and severe than in any [prior] cases." The

---

[21] AS 08.01.075(f).

[22] *Id.*

superior court likewise concluded that "no Alaska case is factually comparable to the sheer scale of malfeasance here."

We agree. Lookhart stole millions of dollars from the state program that provides medical care for the indigent, while simultaneously defrauding a business partner of several hundred thousand more, *and* committing an egregious string of standard-of-care violations that not only jeopardized the safety, privacy, and autonomy of his patients, but also brought the dental profession into disrepute. The lack of any comparable previous case meant that the Board was free to use its expertise to determine an appropriate sanction that would deter future misconduct and restore public trust, based on the unique facts and circumstances of this case.

Although Lookhart cites a string of prior Board decisions as addressing similar circumstances, none bear more than a superficial resemblance to his own case. *In re Greenough*,[23] which Lookhart argues is the Board decision "that bears the most comparable relationship to the current case," involved a dentist whose license was suspended for two years following an insurance fraud conviction.[24] But Greenough defrauded several insurers of roughly $5,000;[25] whereas Lookhart stole $1,600,000, or over 300 times that amount, and committed a series of other wrongful acts in combination with his billing fraud.

Likewise, Lookhart argues that revocation of his license is inconsistent with *In re Houseman*, a case in which a dentist was given a two-week suspension for a

---

[23] OAH Nos. 1200-94-006 & 1200-96-5 (Dec. 22, 1998), https://aws.state.ak.us/OAH/Decision/Display?rec=6585.

[24] *Id.* at 20-21, 59-60.

[25] *See id.* at 20-21. The Board also observed that Greenough's misconduct would "provide a basis for revocation," but declined to consider revocation because the State only sought a suspension. *Id.* at 57.

negligent procedure.[26]  Lookhart suggests that he "did not cause the kind of actual serious harm to patients" that Houseman did.  But Houseman committed a single negligent procedure, while Lookhart nearly killed two of his patients and recklessly endangered the lives of others — and did so in the course of committing extensive Medicaid fraud, an element that has no equivalent in *Houseman*.  The Board did not abuse its discretion by concluding that the magnitude of Lookhart's conduct merited a harsher sanction than it imposed in *In re Greenough* and *In re Houseman*.

Finally, Lookhart points to the superior court decision in *Ness v. State*[27] for the proposition that the Board's sanctions may not impose "pure punishment."  In *Ness*, the superior court concluded that a four-month suspension was an unduly harsh penalty for "a first case of improper procedure in a seventeen year career."[28]  The court explained that this penalty "seem[ed] to constitute unwarranted and unnecessary punishment" that did not further the goals of protecting the public or instilling public respect and confidence.[29]  But unlike Ness's single error, Lookhart committed a "litany of bad acts," which "began at virtually the start of his career and continued until he was caught and arrested."  The Board accordingly concluded that a more severe penalty was necessary, not to punish Lookhart, but to deter misconduct, "ensure public safety and restore trust to the profession."

Lookhart stole millions of dollars from Medicaid.  In furtherance of this massive fraud, he repeatedly subjected his patients to great risk of harm.  There are no cases in the Board's history comparable to Lookhart's.  In light of the lack of any cases

---

[26]  OAH No. 1200-89-00011 at 12-15, 19-20 (June 14, 1990), https://aws.state.ak.us/OAH/Decision/Display?rec=6584.

[27]  *Ness v. State, Bd. of Dental Exam'rs*, No. 3AN-06-8587 CI (Alaska Super., Apr. 28, 2008), https://aws.state.ak.us/OAH/Decision/Display?rec=6581.

[28]  *Id.* at 2.

[29]  *Id.* at 6.

presenting similar facts or circumstances, the Board's conclusion that revocation was the "clear and obvious sanction" given the "sheer magnitude of admitted misconduct" was not an abuse of discretion.

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.